[No. G010170. Fourth Dist., Div. Three. Jan. 13, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
REAL PROPERTY LOCATED AT 25651 MINOA DRIVE, MISSION
VIEJO, CALIFORNIA, Defendant;
STEVEN M. KEEN, Defendant and Appellant.

## COUNSEL

Gregory W. Jones for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John A. Gordnier, Assistant Attorney General, and Gary W. Schons, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**SILLS, P. J.**—Steven M. Keen appeals after the trial court ordered the profits from the sale of his residence forfeited pursuant to Health and Safety Code section 11470, subdivision (g).[1] The trial court found that the profits were subject to forfeiture because Keen's residence was "related to" a violation of section 11366, which prohibits the maintenance of any place for the sale of controlled substances. Many of the issues raised by Keen touch upon the fundamental issue of whether this forfeiture action is essentially "criminal" or "civil" in nature. One of the forfeiture statutes specifically provides that "[t]he Code of Civil Procedure shall apply to proceedings under this chapter . . . ." (§ 11488.4, subd. (i).) For this and other reasons,

---

[1] All statutory references are to the Health and Safety Code unless otherwise specified.

we ultimately conclude this indeed is a civil action, and our holding aids the People in this case. Like the thorns that accompany the rose, however, the application of civil procedure rules to forfeiture proceedings carries with it the spectre of discovery battles, depositions, and demurrers. Although we believe the judgment in this case should be affirmed, prosecutors' offices should be aware that the forfeiture statutes open up a veritable Pandora's box of discovery, in which their investigators, their confidential informants, and their very files may be fair game.

## FACTS

In the first weeks of January 1989 a confidential informant purchased cocaine from Keen at the Keen residence.[2] Based on this information, the police obtained a search warrant for Keen's house. They found a half-ounce of cocaine in Keen's pocket and approximately 27 ounces, in individualized packets, in 3 different locations throughout the house. The officers also found $3,800 secreted behind some paneling. As will be explained in more detail *infra*, Keen told the officers that he conducted all his narcotics business at his desk in the spare bedroom which he used as an office. He said he had been selling cocaine for about two years. During this conversation, Gayle Sieting arrived at Keen's house and Keen told the officers the purpose of Sieting's visit was to purchase cocaine.

On July 24, 1989, the prosecution filed a "Petition for Forfeiture" of the residence, of which Keen was the sole owner. The petition alleged that Keen's real property was subject to forfeiture, but mentioned nothing as to whether Keen's equity interest in the property would also be forfeitable should the property be sold.[3] Keen's property was for sale at the time, however, and the People obviously knew this; concurrently with the filing of the petition, they also filed a lis pendens on the property. The next day, Keen

---

[2] It is quite possible that Keen could have learned the identity of this confidential informant through discovery had he so desired. (We do not have the file of the criminal proceedings against Keen before us—it is conceivable Keen already knew who the informant was.) Efforts by governmental entities to prevent discovery of "confidential" information through Evidence Code section 1040 or Government Code section 6254, subdivision (f) have often been unsuccessful in civil cases. (See *Shepherd* v. *Superior Court* (1976) 17 Cal.3d 107, 123-128 [130 Cal.Rptr. 257, 550 P.2d 161]; *Rubin* v. *City of Los Angeles* (1987) 190 Cal.App.3d 560, 584-587 [235 Cal.Rptr. 516].)

[3] We realize a "petition for forfeiture" is the usual document filed by prosecutors in forfeiture actions. Nonetheless, judged by the standards of a civil complaint, the petition leaves much to be desired. The operative paragraph alleged merely that the real property was related to a violation of section 11366 because it "was being maintained as a place for furnishing drugs . . . ." However, the petition did not allege any specific facts to support this conclusory allegation. The petition was drafted in a style similar to a criminal information, where only the barest of allegations generally appear. This was the first of many instances in which the parties treated this case as if it were a criminal action.

pleaded guilty to a violation of section 11351, possession of cocaine for sale, in the Superior Court of Orange County. (The file from this criminal action is not before us, so we do not know whether Keen was ever charged with a violation of section 11366, which prohibits maintaining a place for trafficking controlled substances.) A few days later, Keen filed a form opposition to the forfeiture petition.

About two months later, on September 19, 1989, the trial court issued an "order for seizure of proceeds subject to forfeiture . . . ." In that order the trial judge (Judge Carter) stated: "I am satisfied that there is probable cause to believe that said *proceeds*/property is subject to seizure and forfeiture . . . ." (Italics added.) The trial court's order authorized any peace officer to seize the proceeds of any sale of the property, less commission and other items, from Escrow Enterprises, Inc., referencing escrow No. 2923. The order also directed Escrow Enterprises to assist any peace officer by turning over the proceeds. At no time did Keen object to this order.

The escrow for the sale of the house closed on October 13, 1989, and a modification of the seizure order was filed October 23, 1989. The escrow company presented a check to the Orange County Sheriff's Department for the profits from the sale of the Keen residence, on October 31, 1989, in accordance with the seizure order.[4] The prosecution recorded the release of the lis pendens on November 13, 1989, after receiving the check.

Trial on the petition for forfeiture commenced on September 14, 1990, with both parties waiving jury. The prosecution's case consisted solely of a declaration by the investigating officer, which was accepted into evidence by stipulation.[5] According to perhaps the most important part of the declaration, Keen had told the officer when he was arrested that he conducted his cocaine business from a desk at his house for the past two years. As the officer stated: "Keen told me that the desk is where he conducted business and once he weighed out the amount of cocaine to be sold, he would make a line from

---

[4]Keen asserts the profits from the sale totalled $40,970.90. The at-issue memorandum filed by the prosecution below stated the amount was $60,970.90. Keen concurred with that figure in his trial brief. At trial, the prosecutor represented the figure to be $40,970.90. The court's forfeiture order stated the amount as $60,970.90. At oral argument before this court, however, counsel for both parties agreed that the higher figure was correct.

[5]We daresay this would never happen in a "regular" civil case; imagine, for example, a personal injury lawsuit where the plaintiff's only evidence is his or her own declaration, and plaintiff is thus never subject to cross-examination of any kind. In fact, this forfeiture action was tried much like a "slow plea," where guilt results from a stipulation to the bare transcript of a preliminary hearing. (See generally *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 599-600 [119 Cal.Rptr. 302, 531 P.2d 1086].) Unlike a slow plea, however, the trial judge in a civil forfeiture action is under no duty to tell the defendant of all the rights he or she waives by essentially "submitting" a case on the basis of a transcript.

that for the customer to do [i.e., to ingest] while he watched." The officer also stated that, at the time of Keen's arrest, a number of items of "drug paraphernalia" were found on top of or inside the desk, including an Ohaus scale, a mirror, plastic baggies and two "cutting agents" used to dilute the purity of cocaine.

The only "live" witness at trial was Steven Herrera, called to testify by Keen. Herrera works part time as a special deputy marshall for the federal government, and part time as a dental laboratory technician. Herrera rented a room in the Keen house for about five years for use as a dental laboratory. Herrera testified he never saw drugs in the house and had no idea that Keen was selling cocaine. In addition to Herrera's testimony, Keen submitted a declaration in which he summarized his interest in the property, that he had purchased the property as a family residence, and that he had earned approximately $2,000 a month from legitimate businesses in the year preceding his arrest. A further stipulation established the monthly mortgage payments on the residence were $1,200.

After a full discussion, the court ordered all proceeds from the sale of the residence forfeited, subject to a 30-day stay. The court stated it was "impressed" by the argument of Keen's counsel that the People were required to prove beyond a reasonable doubt that Keen had maintained his residence as a place for selling controlled substances (the underlying violation under § 11366), and stated, "I'm satisfied that the evidence rises to that level in this case, that one of the purposes of maintaining the residence was for the purpose of violating 11366. [¶] I'm satisfied with that beyond a reasonable doubt." ■■■■ This appeal followed.[6]

DISCUSSION

I.

*The Superior Court Properly Obtained Jurisdiction Over the Real Property and the Proceeds From Its Sale.*

The petition for forfeiture in this case alleged that Keen's property was subject to forfeiture, but not Keen's equity interest in the property in the

---

[6]Rule 13 of the California Rules of Court requires that "[t]he opening brief shall contain either a statement that the appeal is from a judgment that finally disposes of all issues between the parties or a statement explaining why the order or nonfinal judgment is appealable." Keen has failed to do so. However, the forfeiture order following the trial is titled a judgment in section 11488.4, subdivision (i). Code of Civil Procedure section 904.1, subdivision (a) makes any *judgment* appealable unless explicitly excepted. Thus, the judgment of forfeiture is appealable.

event of its sale. The People never amended their petition to include Keen's equity interest, although they knew all along that Keen's property was on the market. However, two months after filing the petition, the People obtained an order from the trial court that clearly contemplated the seizure of the proceeds from the sale of the property; indeed, it authorized any peace officer to seize those proceeds. It is not clear from the record exactly how this order was obtained, but it is clear that Keen never objected to it, either at the time or a month later, when the order was modified to reflect the specifics of the sale. ■ Keen now asserts that, by virtue of the petition for forfeiture, the superior court only had jurisdiction over the real property itself, not the proceeds. He argues that the superior court lost jurisdiction over the real property when the People released their lis pendens following the sale and, since the court never had jurisdiction over the proceeds, there is nothing left to forfeit.

Keen's argument is novel, but we reject it for a variety of legal and practical reasons. First and foremost is the language of section 11470, subdivision (h), which provides that if evidence at a trial proves the realty is forfeitable, "[a]ll right, title, and *interest* in any property . . . vest[s] in the state *upon commission of the act giving rise to forfeiture* under this chapter." (Italics added.) The act giving rise to the forfeiture in Keen's case occurred January 13, 1989, the date of Keen's arrest. Thus, we believe the court's jurisdiction over the property and its proceeds vested long before Keen placed the house on the market or sold it to the third party.

Second, we believe the language of subdivision (g) of section 11470, which authorizes the forfeiture of real property, is consistent with subdivision (h) and contemplates the defendant's monetary interest in the property. After providing that real property related to a violation of certain sections of the Health and Safety Code is forfeitable, subdivision (g) states: "However, an *interest* not to exceed one hundred thousand dollars ($100,000) in real property which is used as a family residence and which is owned by two or more persons shall not be subject to forfeiture." (Italics added.)[7]

Third, acceptance of Keen's argument would create an impediment to selling forfeitable real property in the conventional real estate market, forcing authorities to hold the property until after the forfeiture trial and then selling it at a public auction or sale. We think this situation should be avoided wherever possible, since real property sold on the open market is likely to bring a higher price.

Finally, we cannot condone Keen's failure to object to the forfeiture orders in this case, which authorized the seizure of the proceeds of the sale. If Keen

---

[7]We note that the exemption provided for in section 11470 does not apply in this case, because Keen was the sole owner of the real property.

believed the court lacked jurisdiction over the proceeds, he should have objected in some manner to the seizure orders or filed a motion for judgment on the pleadings (see 6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 262, pp. 563-564), or followed the dictates of section 11488.4, subdivision (g)(2) by filing a motion for return of the property.

Having said all this, we can only wonder why the People never offered to amend their petition. They knew that Keen's house was on the market when they filed their petition, yet risked everything when they steadfastly refused to allege that the proceeds from the sale were forfeitable as well. Nonetheless, Keen knew exactly what was going on; this is not a situation where the prosecution ran amuck.

## II.

*The Ex Post Facto Prohibition Does Not Apply to This Civil Proceeding.*

Keen next contends that the trial court applied the wrong version of section 11470, subdivision (g), the forfeiture statute. This argument is more complicated than it appears at first blush. The trial court applied the amended version of the statute, which took effect January 1, 1989, only days before the confidential informant purchased cocaine from Keen, thus leading to the search of Keen's house. Keen in essence argues that, except for the sale to the confidential informant, all of the conduct allegedly giving rise to the forfeiture occurred prior to the effective date of the amended statute. The old statute required a *conviction* for violating section 11366 (maintaining a place for trafficking drugs) but Keen only pleaded guilty to possession of cocaine for sale; thus, if the old statute applies, the forfeiture was improper. Since the amended statute was used, Keen argues the trial court could only consider conduct occurring after January 1, 1989, because to do otherwise runs afoul of the proscription against ex post facto laws.

In an unbroken chain of cases, our Supreme Court and the United States Supreme Court have held that the ex post facto prohibition applies only to criminal statutes. (See, e.g., *Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 180 [167 Cal.Rptr. 854, 616 P.2d 836] ["The ex post facto clauses (U.S. Const., art. I, § 9, cl. 3; Cal. Const., art. I, § 9) apply only to penal statutes"]; see also *Harisiades* v. *Shaughnessy* (1952) 342 U.S. 580, 594 [96 L.Ed. 586, 601, 72 S.Ct. 512]; *Calder* v. *Bull* (1798) 3 U.S. 386, 400 [1 L.Ed. 648, 654].) Nonetheless, the ex post facto effect of a law cannot be evaded simply by giving a civil label to what in reality is a criminal proceeding. (See, e.g., *Burgess* v. *Salmon* (1878) 97 U.S. 381, 385 [24 L.Ed. 1104, 1106].) We must therefore determine whether a forfeiture action under section 11470 is essentially criminal or civil.

There is a dearth of California authority on this question. Federal authority, however, is abundant. In *United States* v. *One Assortment of 89 Firearms* (1984) 465 U.S. 354 [79 L.Ed.2d 361, 104 S.Ct. 1099], the United States Supreme Court condensed its test into the following summary: " 'Our inquiry in this regard has traditionally proceeded on two levels. First, we have set out to determine whether Congress, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. [Citation.] Second, where Congress has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention [Citation.]' " (*Id.* at pp. 362-363 [79 L.Ed.2d at p. 368].)

 California's forfeiture statute expresses the Legislature's preference for the civil label. (§§ 11488.4, 11488.5, subd. (e); *People* v. *Washington* (1990) 220 Cal.App.3d 912, 917 [269 Cal.Rptr. 668].) In fact, as stated in the introduction to this opinion, section 11488.4, subdivision (i) provides that "[t]he provisions of the Code of Civil Procedure shall apply to proceedings under this chapter . . . ." But we must also examine the forfeiture law in its entirety to see if its effect is so punitive as to negate the civil label given to it. In *Kennedy* v. *Mendoza-Martinez* (1963) 372 U.S. 144 [9 L.Ed.2d 644, 83 S.Ct. 554], the high court developed a list of relevant factors to be considered: "Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned . . . ." (*Id.* at pp. 168-169 [9 L.Ed.2d at p. 661], fns. omitted.)

 Employing this test, we note that under section 11470 a criminal conviction or proceeding is not a prerequisite to forfeiture, so there is no question of scienter in the forfeiture action. In fact, the forfeiture here is completely unconnected to any criminal conviction and, under the mandate of section 11488.4, subdivision (i), is governed by "the provisions of the Code of Civil Procedure . . . unless otherwise inconsistent with the provisions or procedures set forth in this chapter." (See *People* v. *Washington, supra,* 220 Cal.App.3d at p. 916.) Further, the conduct which would give rise to forfeiture under section 11470 is treated separately as a crime in another statute (i.e., § 11366), with a separate criminal punishment. Moreover, there is a separate procedure for *criminal* forfeitures in California, evidencing the

Legislature's recognition of the difference between the two types of forfeitures. (See Pen. Code, § 186.2 et seq.)[8]

Keen has failed to provide us with any authority that the state or federal ex post facto prohibition applies to a forfeiture statute such as section 11470. Thus, our drug forfeiture laws under sections 11470 and 11488.4 are civil and remedial in nature, and the ex post facto guarantees do not apply. All of the evidence relating to Keen's activity prior to January 1, 1989, was therefore properly admitted against him.

That being said, we wish to make explicit what is implicit in our footnotes accompanying the statement of facts in this opinion. If forfeiture actions under the Health and Safety Code are civil proceedings, they ought to be conducted as such. One need not be God's gift to civil litigation to appreciate the motions that could have been filed and the discovery which could have been conducted, in this case as well as forfeiture actions in general. In a forfeiture proceeding the People get the benefit of a reduced standard of proof (§ 11488.4, subd. (i)), a nonunanimous jury (*People* v. *Washington, supra,* 220 Cal.App.3d at p. 917) and, as we have just held, face no impediment from the ex post facto provisions of the state or federal Constitutions. With these benefits, however, come the inevitable burdens common to most civil proceedings: discovery battles, depositions, seemingly endless motions, and so forth. In this case, for example, the arresting officer and the confidential informant might have been deposed, a motion for judgment on the pleadings could have been filed, interrogatories and requests for admissions could have been propounded, and so on. Unlike what occurred here, prosecutors' offices in future forfeiture cases should expect defense counsel to utilize the panoply of devices available to them under the Code of Civil Procedure.[9]

### III.

*The Order of Forfeiture Is Supported by Substantial Evidence.*

Keen's final contention is that insufficient evidence supported the forfeiture. Under subdivision (g) of section 11470, real property is forfeitable if it is "related to a violation, whether charged or not, of Section 11366,

---

[8]Criminal forfeitures are based on in personam jurisdiction over the criminal defendant whose conviction for the crime renders him automatically subject to the added punishment of the item's forfeiture.

[9]We were unable to find any statutory method by which the prosecution could avoid discovery pending the outcome of a related criminal trial. However, under section 11488.5, subdivision (g), "The forfeiture hearing shall be continued upon motion of the People or a claimant who is concurrently a defendant in a related criminal proceeding until the charge in that proceeding has been resolved in the trial court or the defendant fails to appear." Thus, while the forfeiture hearing itself can be continued, related criminal proceedings appear to be no impediment to discovery in the forfeiture case.

11366.5, 11366.6, or 11379.6." As mentioned above, the People need only prove by a preponderance of the evidence that the property is subject to forfeiture. (§ 11488.4, subd. (i).) A criminal action need not precede, or accompany, the forfeiture action as long as the seizure of the property occurs within five years of the conduct giving rise to the forfeiture. (*Ibid.*)

In our view, the most damaging piece of evidence at Keen's forfeiture trial was his admission to the arresting officer that he had conducted his cocaine business out of his house for the preceding two years. In the face of such an admission, which Keen never denied making, we believe it would be nearly impossible to conclude that Keen's property was not "related to" a statute which prohibits the maintenance of a place for selling controlled substances.

Keen nonetheless focuses on the language, "property *related to* a violation . . . of Section 11366 . . . ." He interprets this language as requiring (1) that the violation of section 11366 must first be proven beyond a reasonable doubt; (2) that the offense is "the total justification for maintaining the residence . . . ." to comprise the requisite relationship under the forfeiture statute; and (3) that the offense must be repeated or ongoing and be the total justification for maintaining the residence to meet the requirements of section 11366. We address Keen's "standard of proof" argument first. Section 11488.4, subdivision (i) states the People have the burden of proving that the property is forfeitable by a preponderance of the evidence. It is unclear, however, whether this standard applies to the underlying offense. In this case, for example, there is no question that the preponderance standard applies to the issue of whether Keen's property was "related to" a violation of section 11366; the question is whether the People must prove beyond a reasonable doubt that there was a violation of section 11366 (i.e., maintaining a place for selling drugs) in the first place. The trial judge believed the reasonable doubt standard might apply, and stated, "I'm satisfied that the evidence rises to that level in this case." In light of Keen's admission that he had been dealing cocaine out of his house for two years, we are likewise satisfied. Thus, we need not decide whether the lesser preponderance standard applies to the underlying offense giving rise to the forfeiture.

Addressing Keen's other arguments, we acknowledge that a single, isolated crime, without further corroborating evidence, does not fulfill the "continuous activity" necessary to find that a person maintained a place for selling controlled substances under section 11366. (*People* v. *Roeschlaub* (1971) 21 Cal.App.3d 874, 878 [98 Cal.Rptr. 888].) The query we must resolve here is whether the statute requires the other extreme end of the range of possibilities. Keen proposes that the sole justification for maintaining the residence must be the illegal activity, and that this illegality must be

the "unbroken, coherent whole" of the activity at the residence. He cites no authority for his proposition, and fails to consider the obvious consequences of such an interpretation. If the house is totally and exclusively used for narcotics purposes, it cannot be a residence at all. Because Keen used it as a residence as well as his drug distribution center, he opines the prosecution cannot confiscate it.

Courts which have addressed this issue have concluded that such a limitation on section 11366 would render it meaningless. For example, in *People* v. *Green* (1988) 200 Cal.App.3d 538 [246 Cal.Rptr. 164], Green was arrested inside a "rock house" during execution of a search warrant. He stated he was the sole resident and that all the drug paraphernalia found inside was his. He then withdrew a single container from his pocket containing .64 grams of rock cocaine, the only drugs found in the house. Later, he laughingly told the officers that he had seen Special Weapons and Tactics (SWAT) officers sketching the house and had dumped his supply of drugs in anticipation of a raid. He testified at trial, denying the house was his residence, explaining it was abandoned and he only used it for occasional "partying." He also admitted he was a cocaine addict who could consume .64 grams of cocaine in about 10 minutes by himself. These facts supported his conviction and sentence for maintaining a place for the use of drugs. (*Id.* at p. 544.) Other courts have reached identical conclusions on similar facts. (*Roeschlaub, supra,* 21 Cal.App.3d at pp. 876-877; *People* v. *Clay* (1969) 273 Cal.App.2d 279, 283-284 [78 Cal.Rptr. 56].)

In summary, although a single, isolated instance of criminal conduct does not reflect the requisite "continuity in the pursuit of [the criminal] objective" (*Roeschlaub, supra,* 21 Cal.App.3d at p. 878, citing *People* v. *Horn* (1960) 187 Cal.App.2d 68, 72 [9 Cal.Rptr. 578] and *People* v. *Holland* (1958) 158 Cal.App.2d 583, 588 [322 P.2d 983]), circumstances surrounding one criminal instance may fill the void. Here, the quantity of hidden cocaine, the quantity of hidden currency derived from previous sales of cocaine, Keen's statements that he sold cocaine in quantities of no larger than one-sixtenth ounce and that he had conducted his narcotics business at his office desk inside the residence for the last two years, were all circumstances reasonably relied upon to conclude the residence was used to aid an ongoing business of narcotics sales.

█ On appeal, we must consider the evidence in the light most favorable to the prevailing party. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [496 P.2d 480].) █ Applying that standard, the plaintiff clearly met its burden (whether by preponderance or beyond a reasonable doubt) that the residence was maintained for the purpose of engaging in narcotics

activity. Even though Keen also used it as a residence, the house had a multiplicity of purposes. One of those purposes was illegal. That illegal purpose—selling drugs—was repeatedly successful, as evidenced by the $3,800 Keen received from the sales of his last shipment, of which 27.5 ounces still remained on the premises. Keen was successful at least in part because the sales were conducted in the safety and privacy of his home. The evidence was sufficient to meet the burden imposed by both statutes, maintaining a place for distribution of narcotics (§ 11366) and forfeiture based on its relationship to such a violation (§ 11470, subd. (g)).

## DISPOSITION

We affirm the lower court's judgment of forfeiture.

Sonenshine, J., and Wallin, J., concurred.