[No. F020303. Fifth Dist. Jan. 3, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
ONE 1986 TOYOTA PICKUP, Defendant;
ROBERTO DE LA TORRE, Claimant and Appellant.

## COUNSEL

Robin M. Walters for Claimant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Jeffrey J. Koch, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

### McMECHAN, J.*—

#### STATEMENT OF THE CASE AND FACTS

On March 26, 1992, the United Narcotics Reduction and Apprehension Program Task Force, assisted by the Bakersfield Police Department, detained claimant's cousin and seized the 1986 Toyota pickup truck (Cal. license No. 3E39981) which he had been driving. Claimant's cousin and the latter's passenger were arrested for possession and sales of marijuana. (Health & Saf. Code, §§ 11359, 11360.) On the same date, the task force issued both claimant's cousin and the cousin's passenger receipts for seizure/personal notices of nonjudicial forfeiture proceedings.

On April 14, 1992, the People, through the Kern County District Attorney's Office, mailed a personal notice of nonjudicial forfeiture to claimant, the registered owner of the truck. Thereafter, claimant filed a claim in Kern County Superior Court to oppose the forfeiture.

On April 18, 25, and May 2, 1992, the district attorney published a public notice of nonjudicial forfeiture (Health & Saf. Code, § 11488.4, subd. (e)) in the Bakersfield Californian newspaper. On September 23, 1992, the People filed a complaint for forfeiture of the 1986 Toyota pickup and named Roberto De La Torre as claimant. On February 10, 1993, the People moved for default judgment of the pickup on the basis no answer had been filed in opposition to the complaint.

On the date set for proving up the default judgment, claimant, who was present, was not allowed to appear by the court on the basis it was a default proceeding and claimant's failure to file an answer precluded his right to appear. The court granted a judgment as prayed. The claimant later moved for relief from the default judgment which was denied by the court. Claimant filed a timely notice of appeal.

*Judge of the Mariposa Superior Court sitting under assignment by the Chairperson of the Judicial Council.

## DISCUSSION

### I. *Did the Trial Court Abuse Its Discretion by Not Allowing Claimant to Be Heard at the Default Hearing?*

■ Claimant contends the trial court abused its discretion by refusing to allow him to oppose the People's motion for default and judgment in open court.

Claimant specifically argues: "Appellant timely filed a verified Claim Opposing Forfeiture. . . . When Claimant failed to file an Answer to the Complaint for Forfeiture, Plaintiff noticed a Motion for Default and Judgment on the Pleading [*sic*]. . . . Appellant appeared at the time and place set for the hearing on Real Party's request for default. . . . Claimant was rudely, prejudicially and unconstitutionally denied access to the court. . . . Claimant was not allowed to address the court in opposition to the motion, nor allowed to offer any explanation for his failure to file an answer. . . . This refusal of access was an abuse of discretion by the trial court in this case, and a denial of Appellant's due process and equal protection rights.

" . . . . . . . . . . . . . . . . . . . . .

"Appellant, who speaks Spanish only and was appearing in propria persona, was not allowed to address the court; upon appearing in court, Appellant explained he did not speak English, the Court retorted that it did not speak Spanish. . . . Thereafter, refusing to allow Appellant to participate in the proceedings, explain his failure to file an answer, or even [attempt] to comprehend what was going on, the court granted Plaintiff's Motion for Default and Judgment on the Pleading [*sic*]. . . . This ruling was contrary to law, an abuse of discretion, and an affront to our system of justice."

In this case, the Kern County District Attorney's Office served Jesus Salvador De La Torre and Maria Elna Cano Torres with personal notice of "Non-Judicial Forfeiture Proceedings." The district attorney's office served similar documents on claimant by registered mail. On April 18, 25, and May 2, 1992, the district attorney's office published "Notice of Non-Judicial Forfeiture." On April 21, 1992, claimant filed a claim opposing forfeiture with the clerk of the superior court. On September 23, 1992, the district attorney filed a complaint for forfeiture in superior court and served claimant by first class mail. A notice attached to the complaint stated in both English and Spanish: "You have 30 CALENDAR DAYS after this notice is served on you to file a typewritten response at this court. You may not use a Claim Opposing Forfeiture as a response."

Claimant failed to file an answer to the complaint within the requisite 30 days. On February 10, 1993, approximately five and one-half months later, the district attorney filed a motion for default judgment in superior court. On March 9, 1993, the court conducted a hearing on the motion at which the claimant appeared. He was not allowed to appear in the proceedings on the basis it was a default proceeding. Claimant claimed he was under the misimpression his claim was an answer and wished to oppose the action. Claimant was non-English speaking and was not provided with an interpreter, but merely advised by the court that because of the failure to file the required answer "you lose." The court thereafter entered default judgment forfeiting the 1986 Toyota SR5 4×4 pickup.

The forfeiture statutes do not set forth specific procedures for the conduct of default proceedings. However, the applicable version of Health and Safety Code section 11488.4, subdivision (i) stated in relevant part: "The provisions of the Code of Civil Procedure shall apply to proceedings under this chapter unless otherwise inconsistent with the provisions or procedures set forth in this chapter."

■ Under Code of Civil Procedure section 585 (judgment on default), the entry of a default terminates a defendant's rights to take any further affirmative steps in the litigation until either the default is set aside or a default judgment is entered. A defendant against whom a default has been entered is out of court and is not entitled to take any further steps in the cause affecting plaintiff's right of action. (*Devlin* v. *Kearny Mesa AMC/Jeep/ Renault, Inc.* (1984) 155 Cal.App.3d 381, 385-386 [202 Cal.Rptr. 204]; *Heathman* v. *Vant* (1959) 172 Cal.App.2d 639, 647 [343 P.2d 104]; 6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 242, pp. 544-545.) ■ Relying on the foregoing authority, the People contend claimant "simply had no[] standing to appear, in pro per or otherwise, at the default hearing. He was not entitled to an interpreter."

Entry of default by the court clerk is a statutory prerequisite to both a clerk's default judgment (Code Civ. Proc., § 585, subd. (a)) and a default judgment by the court (Code Civ. Proc., § 585, subds. (b) and (c)). (3 Cal. Civil Procedure Before Trial (Cont.Ed.Bar 3d ed. 1994) § 56.26, pp. 56-21.) Here, the People never requested the clerk to enter claimant's default. Rather, they moved the court for a grant of default judgment approximately five months after filing their complaint in forfeiture.

Claimant appeared at the March 9, 1993, hearing on motion for default judgment and apparently sought to explain the absence of an answer to the complaint in forfeiture. The court summarily granted the People's motion after noting the absence of an answer to the complaint. No default had been

entered against claimant prior to the date of the hearing, thus, his ability to file an answer, appear, or make some other motion was *not* cut off. The court's failure to allow the claimant to appear and be heard absent an entry of default was an abuse of discretion.

The mandate of former Health and Safety Code section 11488.5 requiring an answer be filed within 30 days of service of the complaint does not excuse noncompliance with Code of Civil Procedure sections 585, 585.5 and/or 587.

The People's contention, that if the court erred it was harmless, is without merit. The default judgment entered March 12, 1993, is reversed and the matter is remanded to the superior court with instructions to grant claimant 30 days' leave to file an answer to the complaint for forfeiture pursuant to former Health and Safety Code section 11488.5, subdivision (a)(2). (Stats. 1990, ch. 1200, § 5.) In the event claimant timely files an answer, the superior court is directed to conduct a contested judicial forfeiture proceeding pursuant to former Health and Safety Code section 11488.5, subdivision (e)(1). (Stats. 1990, ch. 1200, § 5.) In the event claimant fails to timely file an answer, the superior court is directed to reinstate the default judgment. (Code Civ. Proc., § 43.)

II. *Did an Intervening Change in the Forfeiture Laws Require a Dismissal of the Instant Action?*

 Claimant contends the Health and Safety Code section which statutorily authorized the forfeiture of property related to drug trafficking expired on January 1, 1994.

Claimant specifically argues:

"California's drug asset forfeiture laws are found, generally, in Health and Safety Code sections 11470, 11488.4[,] and 11488.5. Until the end of 1988, the California forfeiture law required the state to obtain, in most cases, a criminal conviction as a condition precedent to the forfeiture of any property and further required the state to prove the property was related to drug trafficking beyond a reasonable doubt. However, the forfeiture laws, as then embodied in the Health and Safety Code, contained a 'sunset clause' which read as follows:

" 'This section shall remain in effect only until January 1, 1989, and as of that date is repealed, unless a later enacted statute, which is enacted before January 1, 1989, deletes or extends that date[.]' (Health and Safety Code § 11470[(i)]; 11488.4(i)(1); 11488.5(h) as they read on December 31, 1988.)

"Before January 1, 1989, the forfeiture laws were in fact amended. [A] criminal conviction was no longer required and the burden of proof was reduced to a preponderance of the evidence. However, rather than either delete or extend the date of expiration in the 1988 version of the law, the amended version merely inserted a new 'sunset clause' which read as follows:

" 'The provisions of the Health and Safety Code amended by this act shall remain in effect only until January 1, 1994, at which time those sections as they read on December 31, 1988, shall have the same force and effect as if they had not been amended.' (Health and Safety Code § 11470(h); 11488.4(i)(5); 11488.5(j) of the 1989-1993 law.)

"The new 'sunset clause' temporarily extended the forfeiture laws to January 1, 1994, then expressly revived the 1988 law as it existed on December 31, 1988, without in any way amending the previous 'sunset clause.' Since no statute was ever enacted to extend or delete the January 1, 1989 expiration of the 1988 forfeiture law, there is presently no version of the drug asset forfeiture law in existence[.] (Ops. Cal. Legis. Counsel, No. 30765 (November 24, 1993) Controlled Substance-Asset Forfeiture.)[1]

"Even assuming the new law did not expressly revive the former law without modification, the general rules governing the operation of statutes and laws found in the Government Code would have required the same result. Government Code section 9611 requires that any law temporarily modified be given the [s]ame force and effect upon expiration of the modification as if the temporary provision had not been enacted at all. Had the 1989-1993 law never been enacted, the 1988 forfeiture law would have expired by its terms on January 1, 1989.

"Finally, no intent to extend the application of the law may be implied because forfeitures are generally disfavored and any statute imposing a

---

[1]In a November 24, 1993, letter to Assemblyman John L. Burton, the Office of Legislative Counsel stated:

"Examining the express repealer language contained in the December 31, 1988, versions of Sections 11470, 11473.3, 11488, 11488.4, and 11488.5, and utilizing the rules of construction . . . , we conclude that while the matter is not free from doubt, the 1989 repealer language in the sections could only be deleted or extended by further legislation directly or indirectly amending the repealer language on or before January 1, 1989; that Section 16 neither directly nor indirectly deleted or extended the repealer language; and that the absence of action by the Legislature on or before January 1, 1989, regarding the 1989 repealer language . . . resulted in the sections being repealed by their own terms on January 1, 1989. The sections thereby became incapable of revival except by a statute that adds them to the codes. The failure of the Legislature since January 1, 1989, to enact new versions of these sections which are or will become operative on January 1, 1994, results in no version of the sections being operative on January 1, 1994."

forfeiture of property must be strictly construed against the state. [Citations omitted.]

"Therefore, according to the plain language of the forfeiture laws, the Legislative Counsel's published opinion, the required statutory construction, as well as the Government Code, there currently exists no drug asset forfeiture law.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"There being no final judgment in this case, this court is required to dismiss the instant action and return the defendant property."

The Fourth District Court of Appeal, without deciding the matter, has articulated the problem in the following manner: "We are aware of the 1988 amendment to Health and Safety Code section 11470, providing that the section remain in effect until January 1, 1994, and that after that date the section *as it read on December 31, 1988*, would have the same force and effect as if it had not been amended. (Stats. 1988, ch. 1492, §§ 1, 16, pp. 5285-5287, 5298.) Health and Safety Code section 11470 as it read on December 31, 1988, included a provision that it would remain in effect only until January 1, 1989, unless an amendment enacted before January 1989, deleted or extended that date. We recognize that the inelegant language of the 1988 amendment may ultimately have caused section 11470 to be repealed as of January 1, 1994." (*People* v. *Beck* (1994) 25 Cal.App.4th 1095, 1099, fn. 2 [31 Cal.Rptr.2d 44].)

The repeal of a statute creating a penalty, running either to an individual or the state, at any time before final judgment, extinguishes the right to recover the penalty. Forfeiture of a vehicle used to transport narcotics is a penalty to induce performance of a duty and its penal character being obvious, the repeal of the statute authorizing the forfeiture extinguishes the right of forfeiture. (*Lemon* v. *Los Angeles T. Ry. Co.* (1940) 38 Cal.App.2d 659, 670-671 [102 P.2d 387]; *People* v. *One 1953 Buick* (1962) 57 Cal.2d 358, 363 [19 Cal.Rptr. 488, 369 P.2d 16] [construing predecessor statute].) After the commission of the offense resulting in the forfeiture, the title of the state is inchoate or incomplete until such time as there is a judicial determination of the forfeiture. (*People* v. *Broad* (1932) 216 Cal. 1, 4 [12 P.2d 941], cert. den. 287 U.S. 661 [77 L.Ed. 570, 53 S.Ct. 220].) Generally speaking, in the case of common law or judicial forfeiture, the rights of the state date from the judicial determination. In the case of a legislative or statutory forfeiture, the rights of the state date back to the time of the offense. (*People* v. *One 1953 Buick, supra,* 57 Cal.2d at p. 364.) Since the title of the state

remains inchoate and incomplete until forfeiture is judicially decreed, a substantial statutory change in the conditions authorizing the forfeiture must be governed by the general rule applicable to the repeal of statutes of this character. The repeal operates to extinguish all such rights or powers which are at the time of repeal inchoate, incomplete, and unperfected. (*Moss* v. *Smith* (1916) 171 Cal. 777, 789 [155 P.90].) The forfeiture of property used in violation of law, such as a vehicle used to transport narcotics, is the type of action which was cognizable in a common law court. (*People* v. *One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283, 300 [231 P.2d 832].) However, the forfeiture is nonetheless a statutory forfeiture. Having been created by statute, it can be abolished or modified by statute at the will of the Legislature which created it. (*People* v. *One 1953 Buick, supra,* 57 Cal.2d at pp. 363-365.)

In a lengthy response, the People contend: (1) under the plain meaning rule, the January 1, 1989, repealer language does not become effective because the 1989 "sunrise" provision unequivocally directs that on and after January 1, 1994, the provisions " '*as they read on December 31, 1988*' shall be in effect"; (2) the manifest purpose of the legislation was that the 1988 version of the controlled substance forfeiture law was to be revived on January 1, 1994; (3) the legislative history shows the Legislature intended for the 1988 version of the asset forfeiture statutes to be revived and in full force and effect on January 1, 1994; (4) the Legislature cannot be presumed to have indulged in idle acts and there would have been no need to amend the sunrise/sunset provision as recently as 1991 had the Legislature intended for all the asset forfeiture sections to be totally repealed on January 1, 1994; (5) repeal of a statute can be effected only by language of unmistakable meaning and there was no such language here; (6) the pattern established by the Legislature indicates that some asset forfeiture law is to be in effect on January 1, 1994, especially in view of Government Code section 9611;[2] (7) claimant's argument, i.e., that the 1988 law was brought back on January 1, 1994, only to be instantly repealed by its own terms as of December 31, 1988, is an absurdity which the court properly declined to follow; and (8) although the rule of strict construction generally applies to forfeiture statutes, it does not apply to a determination of the legislative intent as to an entire statutory scheme.

The ultimate·interpretation of a statute is an exercise of the judicial power, a power conferred upon the courts by the Constitution. (*Bodinson Mfg. Co.* v.

---

[2]Government Code section 9611 states: "Notwithstanding any other provision of this chapter, whenever a provision of law is temporarily suspended, or is expressly or impliedly modified or repealed by a provision which is declared to be effective for only a limited period, the original provisions are not to be deemed repealed, but upon the expiration of the time of the temporary suspension or the effectiveness of the inconsistent provision, the original provision shall have the same force and effect as if the temporary provision had not been enacted."

*California E. Com.* (1941) 17 Cal.2d 321, 326 [109 P.2d 935].) The primary rule of statutory construction to which every other rule must yield is that the intention of the Legislature should be given effect. The language of any statute and provision therein may not be construed so as to nullify the will of the Legislature or to cause the law to conflict with the apparent purpose the lawmakers had in view. (*California Sch. Employees Assn.* v. *Jefferson Elementary Sch. Dist.* (1975) 45 Cal.App.3d 683, 691-692 [119 Cal.Rptr. 668].)

 Legislative intent should be gathered from the whole act rather than from isolated parts or words. The object sought to be achieved by the statute and the evil sought to be prevented are of prime consideration in its interpretation. Where the main purpose of the statute is expressed, the courts will construe it so as to effectuate that purpose by reading into it what is necessary or incident to the accomplishment of the object sought. (*Rushing* v. *Powell* (1976) 61 Cal.App.3d 597, 603-604 [130 Cal.Rptr. 110].) Claimant fails to explain away the absurdity which looms in the instant case—that the Legislature apparently brought back the 1988 law on January 1, 1994, only to have it instantly repealed by its own terms as of December 31, 1988. Moreover, repeal of a statute can be effected only by language of unmistakable meaning. (*Rowe* v. *Hibernia Sav. and Loan Society* (1901) 134 Cal. 403, 406 [66 P. 569].)

## DISPOSITION

Reversed and remanded for further proceedings consistent with this opinion.

Ardaiz, P. J., and Harris, J., concurred.