[No. C022185. Third Dist. Aug. 1, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
$4,413 UNITED STATES CURRENCY et al., Defendants;
KEVIN KINDORF, Defendant and Appellant.

**COUNSEL**

Frederick R. Remer for Defendant and Appellant.

John D. Phillips, District Attorney, and Phillip R. Urie, Deputy District Attorney, for Plaintiff and Respondent.

**OPINION**

**SIMS, J.**—In this asset forfeiture proceeding under Health and Safety Code section 11470 et seq.,[1] appellant Kevin Kindorf appeals from a judgment in

---

[1] Undesignated statutory references are to the Health and Safety Code.

favor of the People, ordering forfeiture of $4,413 in United States currency, a 1989 GMC pickup truck, and other personal property seized pursuant to a search warrant in connection with drug offenses. Appellant contends (1) the judgment violates his constitutional guarantee to be free from double jeopardy by subjecting him to multiple prosecution and multiple punishment for the same offense, and (2) the trial court lacked subject matter jurisdiction over the case because the civil forfeiture statutes lapsed 12 days before the forfeiture case was instituted. We shall affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On December 10, 1993, law enforcement officers executed a search warrant at appellant's residence and found more than three pounds of methamphetamine and three pounds of marijuana. The officers seized $4,413 in cash, a 1989 GMC pickup truck, and various other items of personal property, for a total value of approximately $12,000.

On December 14, 1993, a criminal complaint was filed, charging appellant with possession of methamphetamine for sale (§ 11378) and possession of marijuana for sale (§ 11359).

On January 12, 1994, the People filed a petition for forfeiture pursuant to section 11470 et seq., alleging the property constituted proceeds traceable to an exchange for a controlled substance or was used or intended to be used to facilitate violation of section 11378 et seq., or was furnished or intended to be furnished in an exchange for controlled substances.

On January 31, 1994, appellant filed a claim opposing forfeiture, pursuant to section 11488.5.

On March 3, 1994, appellant filed an answer to the People's petition for forfeiture, denying the petition's allegations.

On March 8, 1994, pursuant to a plea bargain in the criminal case, appellant pleaded guilty to possession of methamphetamine, and the marijuana count was dismissed.

On May 20, 1994, appellant was sentenced to three years in state prison in the criminal case.

Appellant failed to respond to interrogatories in the forfeiture action, and on April 12, 1995, the trial court granted the People's motion to compel answers. Appellant failed to provide answers, and the People moved for

dismissal of appellant's claim and answer. On July 10, 1995, the trial court granted the People's motion, subject to allowing appellant an opportunity to file a motion to dismiss the forfeiture action on double jeopardy grounds.

In August 1995, appellant filed a motion to dismiss the forfeiture action on double jeopardy grounds, arguing that forfeiture of his personal property for the same conduct that gave rise to his criminal charges constituted a second prosecution for the same offense.

The trial court denied appellant's motion and on October 10, 1995, entered judgment for forfeiture of the property.

DISCUSSION

## I. *Double Jeopardy*

■■■ Appellant contends the forfeiture judgment violated the double jeopardy clause of the United States and California Constitutions, because the government simultaneously subjected him to criminal charges and civil forfeiture proceedings based on his violation of laws regarding controlled substances. We disagree.

The Fifth Amendment of the United States Constitution provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." California Constitution, article I, section 15, provides in part: "Persons may not twice be put in jeopardy for the same offense . . . ."

### A. *The Federal Double Jeopardy Clause*

While this appeal was pending, the United States Supreme Court announced its decision in consolidated cases *United States* v. *Ursery* and *United States* v. *$405,089.23 in United States Currency* (hereafter *Ursery*) (June 24, 1996) __ U.S. __ [135 L.Ed.2d 549, 116 S.Ct. 2135], holding that in rem civil forfeitures under specified federal statutes are neither "punishment" nor criminal for purposes of the double jeopardy clause.

*Ursery* reversed decisions of the Sixth Circuit and Ninth Circuit, which had construed recent United States Supreme Court cases as abandoning prior law and holding civil forfeitures under the pertinent statutes always constitute punishment. (__ U.S. at p. __ [135 L.Ed.2d at p. 558].) *Ursery* explained its recent decisions did not stand for the proposition perceived by the courts of appeal. (*Id.* at p. __ [135 L.Ed.2d at p. 564].) The high court noted the consistent theme in its cases that in rem civil forfeiture, which is a

proceeding against the property itself, is a remedial civil sanction, distinct from potentially punitive in personam civil penalties such as fines, and does not constitute punishment under the double jeopardy clause. (*Id.* at p. __ [135 L.Ed.2d at p. 562].) *Ursery* acknowledged civil forfeiture furthers "broad remedial aims," such as discouraging unlawful conduct and removing its tools from circulation. (*Ibid.* [135 L.Ed.2d at p. 561].) "Forfeitures serve a variety of purposes, but are designed primarily to confiscate property used in violation of the law, and to require disgorgement of the fruits of illegal conduct." (*Id.* at p. __ [135 L.Ed.2d at p. 565].)

 *Ursery* reaffirmed its earlier decisions applying a two-part test to the inquiry. (__ U.S. at pp. __-__ [135 L.Ed.2d at pp. 561-568].) "First, we ask whether [the Legislature] intended proceedings under [asset forfeiture statutes] to be criminal or civil. Second, we turn to consider whether the proceedings are so punitive in fact as to 'persuade us that the forfeiture proceeding[s] may not legitimately be viewed as civil in nature,' despite [the Legislature's] intent." (*Id.* at p. __ [135 L.Ed.2d at p. 568].)

For the first prong, the Legislature's intent is most clearly shown through procedural mechanisms established for enforcing forfeitures. (*Ursery, supra,* __ U.S. at p. __ [135 L.Ed.2d at p. 568].) Thus, labeling the law "civil forfeiture," establishing civil procedure mechanisms, and structuring the forfeitures to be impersonal by targeting the property itself are among the factors demonstrating civil intent. (*Id.* at p. __ [135 L.Ed.2d at p. 568].)

The second prong requires "the clearest proof" of punitive purpose or effect. (__ U.S. at p. __ [135 L.Ed.2d at p. 569].) Relevant factors, which are "neither exhaustive or dispositive," include: " '[w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned. . . .' " (*United States* v. *Ward* (1980) 448 U.S. 242, 247, fn. 7 [65 L.Ed.2d 742, 749, 100 S.Ct. 2636], cited in *Ursery, supra,* __ U.S. at p. __ [135 L.Ed.2d at p. 570].)

The *Ursery* court found "[m]ost significant" the fact that, while the asset forfeiture statutes there at issue perhaps have punitive aspects, they serve important nonpunitive goals. (*Ursery, supra,* __ U.S. at p. __ [135 L.Ed.2d at p. 569].) They provide for forfeiture of property used or intended to be used to commit or facilitate the commission of a federal drug felony.

(*Id.* at p. __ [135 L.Ed.2d at p. 570].) "Requiring the forfeiture of property used to commit federal narcotics violations encourages property owners to take care in managing their property and ensures that they will not permit that property to be used for illegal purposes." (*Id.* at p. __ [135 L.Ed.2d at p. 569].) To the extent the statutes at issue in *Ursery* also call for forfeiture of proceeds of illegal drug activity, they serve "the additional nonpunitive goal of ensuring that persons do not profit from their illegal acts." (*Id.* at p. __ [135 L.Ed.2d at p. 570].) The *Ursery* court also noted other factors. First, there is a long tradition that in rem civil forfeiture has not been regarded as punishment. (*Ibid.*) Second, the federal statutes in question do not require that the government demonstrate scienter in order to make the property subject to forfeiture, and property is subject to forfeiture even if no party files a claim to it and the government never shows any connection between the property and a particular person. (*Ibid.*) Though the federal statutes contain an "innocent owner" exception, the *Ursery* court said such a provision, "without more indication of an intent to punish," does not make the statute punitive under the double jeopardy clause. (*Ibid.*) Third, though the statutes could be said to serve the purpose of deterrence, "this purpose may serve civil as well as criminal goals." (*Ibid.*) Finally, though the statutes are tied to criminal activity, that fact is insufficient to render the statutes punitive. (*Ibid.*)

The Supreme Court clarified: "We do not hold that in rem civil forfeiture is per se exempt from the scope of the Double Jeopardy Clause. . . . Similarly, we do not rest our conclusion in this case upon the long-recognized fiction that a forfeiture in rem punishes only malfeasant property rather than a particular person. . . . That a forfeiture is designated as civil by Congress and proceeds *in rem* establishes a presumption that it is not subject to double jeopardy. . . . Nevertheless, where the 'clearest proof' indicates that an *in rem* civil forfeiture is 'so punitive either in purpose or effect' as to be equivalent to a criminal proceeding, that forfeiture may be subject to the Double Jeopardy Clause." (*Ursery, supra,* __ U.S. at p. __, fn. 3 [135 L.Ed.2d at p. 569].)

We now turn to application of *Ursery* in this case.

Appellant agrees the California drug forfeiture laws serve the same purposes and effect as the federal statutes. Accordingly, under *Ursery* appellant loses his appeal under the federal double jeopardy clause. Even without this concession by appellant, we would reach the same conclusion.

Thus, this case, in which the property was seized on December 10, 1993, is governed by the version of California asset forfeiture laws enacted in 1988

(known by its author's name as "the Katz law") and subsequently amended. Application of the Katz law to this case results from the Legislature's 1994 amendment of the asset forfeiture laws, which provides in section 11494: "*In the case of any property seized* or forfeiture proceeding initiated *before January 1, 1994*, the proceeding to forfeit the property and the distribution of any forfeited property shall be subject to the provisions of this chapter in effect on December 31, 1993, as if those sections had not been repealed, replaced, or amended."[2] (Stats. 1994, ch. 314, § 22, italics added.)

The law in effect on December 31, 1993, was the Katz law, enacted in 1988, as subsequently amended. (E.g., Stats. 1988, ch. 1492; Stats. 1989, ch. 1195; Stats. 1990, ch. 1200; Stats. 1991, ch. 641.) These provisions thus control this case. (See *People* v. *$31,500 United States Currency* (1995) 32 Cal.App.4th 1442, 1451-1452 [38 Cal.Rptr.2d 836]; *Mundy* v. *Superior Court* (1995) 31 Cal.App.4th 1396, 1405 [37 Cal.Rptr.2d 568].)

These provisions have been held to be civil in nature. (*People* v. *25651 Minoa Dr.* (1992) 2 Cal.App.4th 787, 795-797 [3 Cal.Rptr.2d 577] [asset forfeiture provisions are civil in nature, hence not subject to the prohibition against ex post facto laws].) *Minoa* applied the same analysis as the federal decisions reaffirmed in *Ursery*. (*Ursery, supra*, __ U.S. at p. __ [135 L.Ed.2d at p. 562]; *25651 Minoa Dr., supra*, 2 Cal.App.4th at p. 796.) As stated by the *Minoa* court, these California forfeiture statutes (which called for in rem proceedings) specified that the proceedings be handled under the provisions of the Code of Civil Procedure (former § 11488.4, subd. (i), Stats. 1990, ch. 1200, § 4, p. 5008;[3] former § 11488.5, subd. (g), Stats. 1990, ch. 1200, § 5, p. 5010).[4] (*25651 Minoa Dr., supra*, 2 Cal.App.4th at pp. 796-797.) The *Minoa* court further noted scienter was not required, and forfeiture was unconnected to any criminal conviction. (*Id.* at p. 796.)

Appellant cites federal cases for the proposition that civil forfeiture statutes constitute punishment unless their "sole" purpose is remedial. Any

---

[2]The 1994 legislation enacted new provisions applicable to future seizures. We have no need to decide any issue concerning the law applicable to future seizures under the 1994 legislation.

[3]Since the 1994 law contains a new section 11488.4 applicable to future seizures, we shall refer to the version of section 11488.4 applicable to this case as "former" section 11488.4.

Former section 11488.4, subdivision (i), provides in part: ". . . The provisions of the Code of Civil Procedure shall apply to proceedings under this chapter unless otherwise inconsistent with the provisions or procedures set forth in this chapter. However, in a proceeding under this chapter, there shall be no joinder of actions, coordination of actions, except for forfeiture proceedings, or cross-complaints, and the issues shall be limited strictly to questions related to this chapter. . . ." (Stats. 1990, ch. 1200, § 4, p. 5008.)

[4]Former section 11488.5, subdivision (g), provides in part: ". . . The forfeiture hearing shall be conducted in accordance with Sections 600 to 630, inclusive, of the Code of Civil Procedure if a trial by jury, and by Sections 631 to 636, inclusive, of the Code of Civil Procedure if by the court. . . ." (Stats. 1990, ch. 1200, § 5, p. 5010.)

such construction has been refuted by *Ursery*, which makes clear that the existence of some punitive aspects does not mean a forfeiture constitutes punishment for double jeopardy purposes. (*Ursery, supra*, __ U.S. at p. __ [135 L.Ed.2d at p. 568].)

Appellant fails to show by the "clearest proof" that this in rem civil forfeiture, designated as civil by the Legislature, is so punitive in purpose or effect as to be equivalent to a criminal proceeding, so as to subject the forfeiture to the double jeopardy clause under the United State Constitution. (*Ursery, supra*, __ U.S. at p. __, fn. 3 [135 L.Ed.2d at p. 569].)

### B. *The State Double Jeopardy Clause*

Appellant suggests the California double jeopardy clause provides broader protection than the federal clause. ■ The California Constitution is a document of independent force that may be interpreted in a manner more protective than the United States Constitution. (Cal. Const., art. I, § 24; *People* v. *Fields* (1996) 13 Cal.4th 289, 298 [52 Cal.Rptr.2d 282, 914 P.2d 832]; *Raven* v. *Deukmejian* (1990) 52 Cal.3d 336, 353-354 [276 Cal.Rptr. 326, 801 P.2d 1077] [invalidating constitutional amendment by initiative measure which would have altered this rule for wide spectrum of rights].) However, the general policy is that " 'cogent reasons must exist before a state court in construing a provision of the state Constitution will depart from the construction placed by the Supreme Court of the United States on a similar provision in the federal Constitution.' " (*Raven, supra*, 52 Cal.3d at p. 353.)

■ "Under both the federal and state Constitutions, the double jeopardy clause 'serves principally as a restraint on courts and prosecutors.' [Citation.] . . . . 'The underlying idea . . . is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' Decisions under the double jeopardy clause of the California Constitution likewise recognize the defendant's interest in avoiding both the stress of repeated prosecutions and the enhanced risk of erroneous conviction." (*People* v. *Fields, supra*, 13 Cal.4th at p. 298.)

■ We believe the test reaffirmed in *Ursery* is adequate to safeguard these interests. We see no reason, and appellant proposes none, why a broader rule than *Ursery* should be applied under the California double jeopardy clause.

Appellant presents no authority or analysis supporting a departure from the *Ursery* test. He merely cites California cases recognizing that the California asset forfeiture laws have a punitive aspect. (E.g., *People* v. *$1,930 United States Currency* (1995) 38 Cal.App.4th 834, 848 [45 Cal.Rptr.2d 322]; *People* v. *One 1986 Toyota Pickup* (1995) 31 Cal.App.4th 254, 262 [37 Cal.Rptr.2d 29].) However, if appellant means to suggest that the California double jeopardy clause should be construed as applying to any forfeiture which has any punitive aspect, we disagree. None of the cited cases supports that proposition. Recognizing that California's drug forfeiture statutes serve both remedial and punitive purposes, *People* v. *$1,930 United States Currency, supra*, 38 Cal.App.4th 834, construed federal cases and rejected the view that under the federal test forfeiture constituted punishment for double jeopardy purposes unless the statute served *solely* a remedial purpose. (*Id.* at p. 848.) Instead, the court believed the federal test would turn on whether there was some rational relation between the value of the proceeds and harm occasioned by the criminal conduct. (*Id.* at p. 851.) The federal test, of course, has since been resolved by *Ursery*. The court in *$1,930 United States Currency* did not consider or decide whether the California Constitution would provide broader protection on this matter.

The other cases cited by appellant did not address double jeopardy but involved a different matter—whether changes in asset forfeiture legislation extinguished the government's ability to obtain forfeiture under the principle that the prejudgment repeal of a statute creating a penalty extinguishes the right to recover the penalty. (E.g., *People* v. *One 1986 Toyota Pickup, supra*, 31 Cal.App.4th 254 [rejecting argument that forfeiture law lapsed].) Appellant fails to show how this principle applies to the double jeopardy question.

We recognize California courts have departed from the federal double jeopardy rules in certain contexts. Thus, the California Supreme Court has not followed the United States Supreme Court rule that double jeopardy will not bar prosecution and conviction for the same act by both federal and state governments. (E.g., *People* v. *Comingore* (1977) 20 Cal.3d 142, 145-146 [141 Cal.Rptr. 542, 570 P.2d 723].) However, the reason for departing from the federal construction was that the federal rule conflicted with the California Supreme Court's construction of a California statute (Pen. Code, § 656) protecting against dual convictions in state and federal courts for the same act. (20 Cal.3d at pp. 145-146.) Here, appellant cites no California statute which conflicts with *Ursery*.

Though not mentioned by appellant, we recognize *Cardenas* v. *Superior Court* (1961) 56 Cal.2d 273 [14 Cal.Rptr. 567, 363 P.2d 889] declined to adopt a United States Supreme Court decision which interpreted the federal

Constitution in a manner which would conflict with established California law holding the state double jeopardy clause barred a retrial following a mistrial granted over the defendant's objection. (*Id.* at pp. 275-277.) Our Supreme Court reaffirmed *Cardenas* in a later case after the federal double jeopardy clause was made applicable to the states. (*Curry* v. *Superior Court* (1970) 2 Cal.3d 707, 716 [87 Cal.Rptr, 361, 470 P.2d 345].) Here, appellant fails to show any conflict between *Ursery* and California law.

We note that in other contexts, our Supreme Court has declined to interpret the California double jeopardy clause as providing greater protection than the federal double jeopardy clause. (E.g., *People* v. *Fields, supra,* 13 Cal.4th at pp. 302-305 [under double jeopardy clauses of federal and state constitutions, when jurors deadlock on a greater offense, an acquittal on that charge will not be implied by the jury's verdict of guilty on a lesser included offense]; *People* v. *Saunders* (1993) 5 Cal.4th 580, 596-597 [20 Cal.Rptr.2d 638, 853 P.2d 1093] [assuming double jeopardy principles apply to prior conviction allegations, neither federal nor state double jeopardy clause was violated by trial court's conducting bifurcated proceedings to determine truth of prior conviction allegations following discharge of jury that decided current charges].)

We see no reason to interpret the California double jeopardy clause different from *Ursery*'s interpretation of the federal clause.

We conclude the forfeiture in this case is not subject to the federal or state double jeopardy clause.[5]

II. *Subject Matter Jurisdiction*

In his opening brief, appellant argued the trial court lacked subject matter jurisdiction, because the California asset forfeiture statutes assertedly lapsed on January 1, 1994, 12 days before this case was instituted, and applying a later statute would constitute a prohibited ex post facto law. Appellant's argument has been rejected by Division Three of the Fourth District in *Mundy* v. *Superior Court, supra,* 31 Cal.App.4th at page 1405, and by this court in *People* v. *$31,500 United States Currency, supra,* 32 Cal.App.4th at page 1459.

---

[5]We therefore need not address appellant's argument as to whether this case involved "separate proceedings for the same offense" in violation of the double jeopardy clause.

As support for his argument, appellant initially relied on this court's opinion in *People* v. *9660 Cherokee Lane, Newcastle*\* (Cal.App.). However, after appellant filed his opening brief in this appeal, the California Supreme Court on March 28, 1996, decertified publication of *Cherokee Lane*. That opinion may not be cited as precedent in this case. (Cal. Rules of Court, rule 977.) In his reply brief, appellant queries whether decertification eliminates all aspects of his argument, but he concludes "in light of the decertification, [appellant] will not further press his arguments regarding the statute before this Court."

Thus, appellant has abandoned the issue.

### DISPOSITION

The judgment is affirmed.

Puglia, P. J., and Raye, J., concurred.

---

\*Reporter's Note: Opinion (C018425) deleted upon direction of Supreme Court by order dated March 28, 1996.