[No. G015679. Fourth Dist., Div. Three. Jan. 31, 1995.]

ARNOLD PAUL MUNDY, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Terrence J. Bennett for Petitioner.

No appearance for Respondent.

Michael R. Capizzi, District Attorney, Maurice L. Evans, Chief Assistant District Attorney, and Gregory J. Robischon, Deputy District Attorney, for Real Party in Interest.

## OPINION

**SONENSHINE, Acting P. J.**—In this writ proceeding Arnold Paul Mundy challenges the constitutionality of the newly enacted asset forfeiture law,

Statutes 1994, chapter 314. (Health & Saf. Code,[1] § 11469 et seq.)[2] We find the law withstands constitutional scrutiny and deny Mundy's claim for extraordinary relief.

I

FACTUAL AND PROCEDURAL BACKGROUND

This case arose in July 1993 when the police seized, inter alia, 1,049 grams of marijuana and $24,796 from Mundy's Riverside County home during a warrant search. On August 19, the Orange County District Attorney filed a complaint to have the money forfeited as narcotics related.[3] In his seventh affirmative defense to the complaint, Mundy alleged, "The repeal [on January 1, 1994] of the forfeiture law under which this complaint was brought deprives the court of subject matter jurisdiction in this case." Mundy's motion to dismiss the complaint on this basis was denied. The trial court found that while the 1993 forfeiture law had expired, "the forfeiture provisions as they existed in 1988 remain effective."

Mundy petitioned for a writ of mandate/prohibition to prevent continuation of the forfeiture action. After receiving informal responses, we issued an alternative writ of mandate and ordered the district attorney, real party in interest, to show cause why the action should not be dismissed. The issue we examined was whether a valid statutory framework existed under which the district attorney could pursue the forfeiture claim. Both sides agreed the forfeiture law changed on January 1, 1994. However, while the district attorney argued the 1988 version of the law became effective that date, Mundy contended the law simply went out of existence.

Before that issue was decided, the Governor signed the new forfeiture law, which provides in pertinent part as follows: "In the case of any property seized or forfeiture proceeding initiated before January 1, 1994, the proceeding to forfeit the property and the distribution of any forfeited property shall be subject to the provisions of this chapter in effect on December 31, 1993, as if those sections had not been repealed, replaced, or amended." (Stats. 1994, ch. 314, § 22.)

We invited, and have received from the parties, additional briefing concerning the effect of this provision. They agree it mandates application of the

[1] All statutory code references are to the Health and Safety Code unless otherwise specified.

[2] The law was passed as an "urgency statute." (Stats. 1994, ch. 314, § 26.) Thus, it became effective immediately with the Governor's signature on August 19, 1994. (Cal. Const., art. IV, § 8, subd. (c), par. (2).)

[3] Separate criminal charges were brought in Riverside County.

December 31, 1993, forfeiture law here, since Mundy's property was seized and forfeiture proceedings initiated before January 1, 1994. Yet Mundy maintains it is unconstitutional to subject him to the 1993 law because the forfeiture law either lapsed or became more lenient on January 1, 1994. He asserts the prohibition against ex post facto laws and equal protection principles guarantee him the right to any advantages that accrued under the law after January 1, 1994.

To assess Mundy's claims, we must examine the history of the pertinent forfeiture statutes (pt. II), consider how they changed on January 1, 1994 (pt. III), and ultimately determine whether subjecting Mundy to the law as it existed in 1993 is constitutional (pts. IV and V).

## II

### OVERVIEW OF RELEVANT FORFEITURE STATUTES

California's drug asset forfeiture law has undergone numerous revisions since its enactment in 1972. (See generally, 3 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Punishment for Crime, §§ 1423-1426, pp. 1685-1690.) In this proceeding, we are concerned with the evolution of sections 11470 (items subject to forfeiture), 11488 (seizure of forfeitable property), 11488.4 (forfeiture proceeding), and 11488.5 (redeeming seized property). In 1987, the Legislature amended these provisions by enacting the so-called *"Condit"* law, named for its author, Assemblyman Gary Condit. (See Stats. 1987, ch. 924, p. 3109.) Under *Condit*, forfeiture proceedings were tied to the underlying criminal charges in that a conviction was generally required as a prerequisite to forfeiture, and the same jury which rendered the conviction was required to hear the forfeiture issue. (*Id.* at § 4, pp. 3113-3117.) At the hearing, the government's burden of proof in cases involving less than $25,000 was to show beyond a reasonable doubt that the money was subject to forfeiture. (*Ibid.*) Jurisdiction lay in the county where the defendant had been criminally charged or where the property had been seized. (*Ibid.*)

Much of the *Condit* law, including those sections at issue here, was designed to expire on January 1, 1989, absent a legislative extension. This was accomplished by adding conditional "sunset" clauses into the provisions which read: "This section shall remain in effect only until January 1, 1989, and as of that date is repealed, unless a later enacted statute, which is enacted before January 1, 1989, deletes or extends that date." (See Stats. 1987, ch. 924, §§ 1, 3, 4, 6, pp. 3109-3120.)

In 1988, the Legislature passed the *"Katz"* forfeiture law, authored by Assemblyman Richard Katz. (See Stats. 1988, ch. 1492, p. 5285.) *Katz* was

drafted to bring California's drug asset forfeiture provisions more closely in line with the federal asset forfeiture statutes. (Assem. 3d reading of Assem. Bill No. 4162 (1988 Reg. Sess.) (May 11, 1988) p. 5.) It was hoped that with fewer procedural hurdles to overcome, state officials would be disinclined to turn major drug cases over to federal authorities and more seized assets would stay in California. (*Ibid.*) To that end, *Katz* eliminated the requirement of a criminal conviction and lessened the state's burden of proof to a preponderance of the evidence. (Stats. 1988, ch. 1492, § 9, pp. 5288-5291.) *Katz* also replaced *Condit*'s individual sunset provisions with a blanket five-year sunset clause which provided: "The provisions of the Health and Safety Code amended by this act [including Sections 11470, 11488, 11488.4 and 11488.5] shall remain in effect only until January 1, 1994, at which time those sections as they read on December 31, 1988, shall have the same force and effect as if they had not been amended." (Stats. 1988, ch. 1492, § 16, p. 5298.)

In 1990, the Legislature amended *Katz* by making the Code of Civil Procedure applicable to forfeiture proceedings and extending jurisdiction to include the county where the seized property was presently located. (Stats. 1990, ch. 1200, § 4.) The Legislature also reinserted individual sunset provisions in sections 11470, 11488.4, and 11488.5.[4] These new clauses mirrored the blanket sunset provision added in 1988, except they did not call for the revival of the December 31, 1988, laws on January 1, 1994. The clauses simply state: "This section shall remain in effect only until January 1, 1994, and as of that date is repealed." (Stats. 1990, ch. 1200, §§ 1, 4, 5.)

In 1991, however, the Legislature, by amending *Katz*'s original blanket sunset clause, reaffirmed its intention to revive the 1988 law on January 1, 1994. The amendment provides: "The provisions of the Health and Safety Code amended by this act [including Sections 11470, 11488, 11488.4 and 11488.5], except Section 11489 [distribution of sale proceeds], shall remain in effect only until January 1, 1994, at which time those sections as they read on December 31, 1988, shall have the same force and effect as if they had not been amended." (Stats. 1991, ch. 641, § 14.)

Finally, on August 19, 1994, the new forfeiture law became effective. It was specifically intended "to reduce the confusion and ambiguity which presently exist with respect to which, if any, version of [Sections 11470, 11488, 11488.4 and 11488.5] is operative." (Stats. 1994, ch. 314, § 25.) The new law provides, "In the case of any property seized or forfeiture proceeding initiated before January 1, 1994, the proceeding to forfeit the property and the distribution of any forfeited property shall be subject to the provisions of this chapter in effect on December 31, 1993, as if those sections had

---

[4]Section 11488 was not amended in 1990.

not been repealed, replaced, or amended." (*Id.* at § 22.)[5] Many of the procedural protections afforded under *Condit* are restored under the new law, such as the necessity of an underlying criminal conviction and the requirement of proof beyond a reasonable doubt. (*Id.* at § 13.)

III

How the Forfeiture Law Changed on January 1, 1994

 The new forfeiture law dictates application of the 1993 law, i.e., *Katz*, to the current proceedings, notwithstanding any changes that occurred in the law after *Katz* expired on January 1, 1994. We must assess the extent to which these changes may have favored Mundy to determine whether subjecting him to *Katz* is constitutional.

The parties offer two possibilities as to how the forfeiture law changed on January 1, 1994. Mundy claims the entire forfeiture scheme lapsed on that date, while the district attorney maintains the subject provisions simply reverted to an earlier incarnation. The answer lies in whether the Legislature contemplated a return to an earlier version of the law and the enforceability of the earlier statutes after January 1, 1994.

Well-established rules of statutory construction govern our analysis of these issues. First, we endeavor to ascertain the intent of the Legislature by looking to the words of the statutes and giving them their ordinary meaning. (*People* v. *Broussard* (1993) 5 Cal.4th 1067, 1071 [22 Cal.Rptr. 278, 856 P.2d 1134].) "When statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it. [Citations.]" (*People* v. *Overstreet* (1986) 42 Cal.3d 891, 895 [231 Cal.Rptr. 213, 726 P.2d 1288].) "Of course, language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend. [Citation.] In such circumstances, the intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.]" (*People* v. *Broussard, supra,* 5 Cal.4th at pp. 1071-1072, internal quotation marks omitted.)

1. *Did the Legislature intend the subject provisions to revert to an earlier form on January 1, 1994?*

As set forth above, the 1988 version of *Katz* contained a blanket clause calling for the subject provisions to expire and revert to their December 31,

---

[5]The new law is silent as to which provisions govern where the property was seized between January 1 and August 19, 1994.

1988, form on January 1, 1994. However, in 1990, the Legislature inserted individual sunset clauses in sections 11470, 11488.4 and 11488.5 which provided for the provisions to expire on January 1, 1994, without any reversion. Arguably, then, the 1990 amendments repealed the blanket sunset provision to the extent no reversion occurred on January 1, 1994.

 The primary consideration militating against this interpretation is that "repeals by implication are disfavored, being recognized only if two apparently conflicting laws cannot be harmonized. [Citations.] We are bound to maintain the integrity of both statutory provisions if the two can stand together. [Citation.]" (*In re Manuel L.* (1994) 7 Cal.4th 229, 235-236 [27 Cal.Rptr.2d 2, 865 P.2d 718].) The blanket sunset clause and the 1990 sunset provisions are consistent to the extent they contain January 1, 1994, expiration dates. Thus, the Legislature logically may have thought it unnecessary to reiterate the previously stated reversion language in 1990. Nonetheless, the Legislature *did* reaffirm the original blanket clause in 1991. Under this most recent expression of legislative intent, the subject provisions are to be interpreted on January 1, 1994, "as they read on December 31, 1988[.]" (See Stats. 1991, ch. 641, § 14.) Accordingly, we find the Legislature contemplated and intended the revival of the *Condit* law on January 1, 1994.[6]

### 2. Was the Condit law enforceable after January 1, 1994?

The ostensible problem with reviving *Condit* is its January 1, 1989, expiration date. Mundy would have us believe that if *Condit* became controlling on January 1, 1994, it immediately expired by virtue of its January 1, 1989 repeal date. Indeed, the Legislative Counsel reached this conclusion in analyzing whether there would be a valid asset forfeiture law after January 1, 1994. (Ops. Cal. Legis. Counsel, No. 30765 (Nov. 24, 1993) Controlled Substances: Asset Forfeiture.) The Legislative Counsel reasoned: "While [*Katz*] is 'a later enacted statute, which was enacted before January 1, 1989,' [it] does not directly amend the 1989 repealer language of [*Condit*] to 'delete or extend' the 1989 repealer date in the repealer language. Rather [*Katz*]

---

[6]Government Code section 9611 would likely have operated to revive *Condit*, even if the Legislature had failed to expressly do so. That section provides: "Notwithstanding any other provision of this chapter [Government Code sections 9600 through 9612], whenever a provision of law is temporarily suspended, or is expressly or impliedly modified or repealed by a provision which is declared to be effective for only a limited period, the original provisions are not to be deemed repealed, but upon the expiration of the time of the temporary suspension or the effectiveness of the inconsistent provision, the original provision shall have the same force and effect as if the temporary provision had not been enacted." Section 9611 is intended to prevent the inadvertent repeal of statutes when temporary modifications or suspensions of such statutes expire by their terms. (*In re Pedro T.* (1994) 8 Cal.4th 1041, 1050 [36 Cal.Rptr.2d 74, 884 P.2d 1022].)

provides for the revival on January 1, 1994, of [*Condit*]. Thus, the Legislature did not directly amend the 1989 repealer language to delete or extend the 1989 repealer date, and applying the 'plain meaning' rule to [*Katz*], [its] enactment . . . would not prevent the operation of the 1989 repealer language from taking effect by means of a direct amendment of the 1989 repealer language." (*Id.* at p. 3.)

■ While opinions of the Legislative Counsel generally are entitled to considerable weight, they are not binding. (*California Assn. of Psychology Providers* v. *Rank* (1990) 51 Cal.3d 1, 17 [270 Cal.Rptr. 796, 793 P.2d 2]; *Ultramar, Inc.* v. *South Coast Air Quality Management Dist.* (1993) 17 Cal.App.4th 689, 712 [21 Cal.Rptr.2d 608].) The fundamental flaw in the Legislative Counsel's reasoning is the assumption *Katz* did not directly amend or delete *Condit*'s 1989 repeal date. In fact, *Katz* did effectively delete that date by extending the subject provisions until January 1, 1994. There was no need for the Legislature to specifically address the repeal date in enacting legislation which rendered it moot. In any event, the Legislature determined the subject provisions are to be interpreted "as they read on December 31, 1988[.]" *As of that date*, the repeal clauses contained therein were ineffectual since it was one day before January 1, 1989. Consequently, *Katz*'s failure to specifically address *Condit*'s 1989 repeal date is immaterial.

The Legislative Counsel's opinion also conflicts with his earlier digest analysis of *Katz*. Five years before he opined, "[T]here will be no version of [the subject] sections . . . on or after January 1, 1994" (Ops. Cal. Legis. Counsel, No. 30765 *supra*, Controlled Substances: Asset Forfeiture, at p. 11); the Legislative Counsel believed the subject sections "would be repealed and [*Condit* would be] revived on January 1, 1994." (Legis. Counsel's Dig., Assem. Bill No. 4162, 4 Stats. 1988 (Reg. Sess.) Summary Dig., p. 530.) Having been written closer in time to *Katz*'s passage than the Legislative Counsel opinion, we may presume the digest analysis more fully comports with the legislative intent. (See *Bravo Vending* v. *City of Rancho Mirage* (1993) 16 Cal.App.4th 383, 399, fn. 9 [20 Cal.Rptr.2d 164] [opinion letter from Legislative Counsel to individual Senator two years after subject amendment "provide[d] no indication of how [the amendment] was understood at the time it was enacted by those who voted to enact it."].)

■ It is true, as the Legislative Counsel's opinion points out, that "forfeiture statutes are disfavored and must be construed strictly in favor of the owner of the property. [Citations.]" (*People* v. *Ten $500 etc. Traveler's Checks* (1993) 16 Cal.App.4th 475, 479 [20 Cal.Rptr.2d 128].) However, this maxim cannot be used to subvert the plain language of a forfeiture law. (See *United States* v. *Monsanto* (1989) 491 U.S. 600, 611 [105 L.Ed.2d 512, 524,

109 S.Ct. 2657].) Where, as in this instance, the law is clear, the rule of strict construction of forfeiture provisions will not be used " 'as an overriding consideration of being lenient to wrongdoers.' [Citation.]" (*Russello* v. *United States* (1983) 464 U.S. 16, 29 [78 L.Ed.2d 17, 28, 104 S.Ct. 296]; see also *People* v. *One Pontiac 8 Sedan* (1937) 22 Cal.App.2d 503, 505 [71 P.2d 302] [courts cannot rewrite the clear provisions of a forfeiture law under the guise of statutory construction].)

Furthermore, we must strive to give effect and meaning to all parts of a law if possible and avoid interpretations which render statutory language superfluous. (See *Stafford* v. *Realty Bond Service Corp.* (1952) 39 Cal.2d 797, 805 [249 P.2d 241].) Adopting Mundy's position would result in the repeal of various forfeiture provisions while leaving other sections of the law fully intact. (See, e.g., §§ 11473, 11473.2, 11488.6.)[7] Although preserved on paper, the surviving statutes would mean little without a valid statutory mechanism for triggering a forfeiture.

■ Finally, we find it significant that the Legislature went out of its way to amend *Katz*'s general sunset provision in 1991. This amendment ensured *Condit*'s revival on January 1, 1994. Yet, if, as Mundy speculates, *Condit* expired immediately upon its revival, then the 1991 amendment was an exercise in futility. The Legislature presumably has better things to do than pass meaningless and duplicative measures. (See *Silberg* v. *Anderson* (1990) 50 Cal.3d 205, 216 [266 Cal.Rptr. 638, 786 P.2d 365].) Moreover, Mundy has "fail[ed] to explain away the absurdity which looms in the instant case—that the Legislature apparently brought back [*Condit*] on January 1, 1994, only to have it instantly repealed by its own terms[.]" (*People* v. *One 1986 Toyota Pickup* (1995) 31 Cal.App.4th 254, 264 [37 Cal.Rptr.2d 29].)

We therefore find the forfeiture provisions attacked by Mundy did not suddenly disappear on January 1, 1994. Instead, the *Condit* provisions became effective that day and remained enforceable until August 19, 1994, when the new forfeiture law became effective. Under the new law, the statutes in effect on December 31, 1993 (*Katz*) govern proceedings which were commenced before January 1, 1994. We therefore must determine whether subjecting Mundy to *Katz* instead of *Condit* constitutes a deprivation of his constitutional rights.

---

[7]These sections deal with the destruction, transfer, and redemption of forfeited property. They were amended in 1988 (Stats. 1988, ch. 1492, §§ 3, 5, 13, pp. 5287, 5293-5294) and thus reverted back to their December 31, 1988, form on January 1, 1994, per *Katz*. However, the earlier versions of these provisions, unlike sections 11470, 11488, 11488.4 and 11488.5, did not contain repeal clauses. (See Stats. 1983, ch. 948, §§ 2, 4, pp. 3407-3408; Stats. 1986, ch. 534, § 5, pp. 1917-1918.)

## IV

### THE EX POST FACTO PROHIBITION

■ Because *Katz* offers fewer procedural safeguards than *Condit*, Mundy asserts resurrecting *Katz* violates the ex post facto prohibition. (See U.S. Const., art. I, § 10, cl. 1; Cal. Const., art. I, § 9.) He relies heavily on recent decisions finding forfeiture proceedings constitute punishment for Eighth Amendment and double jeopardy purposes. (See respectively *Austin v. United States* (1993) 509 U.S. __ [125 L.Ed.2d 488, 113 S.Ct. 2801] and *United States* v. *$405,089.23 U.S. Currency* (9th Cir. 1994) 33 F.3d 1210.) However, these decisions do not compel the conclusion that subjecting Mundy to the *Katz* procedures is unconstitutional.

First, it is important to note that Mundy's property was subject to forfeiture under both *Condit* and *Katz*. Mundy's complaint is therefore limited to the procedural mechanisms governing his forfeiture action. When a change in the law addresses the conduct of trials which have yet to occur, as opposed to past conduct, the law is deemed prospective only and does not implicate ex post facto concerns. (*Tapia* v. *Superior Court* (1991) 53 Cal.3d 282, 288-291 [279 Cal.Rptr. 592, 807 P.2d 434].)

The procedural protections at issue here relate primarily to the future forfeiture hearing, e.g., the order and burden of proof. Therefore, they are properly characterized as prospective only. The sole exception is the change in the rules for jurisdiction. Under *Condit*, Riverside County alone would have had jurisdiction in this proceeding, but *Katz* gives Orange County jurisdiction as well, since the property is currently located here. However, it is well-established that changing the place for trial after commission of the offense does not violate the ex post facto prohibition. (*Gut* v. *The State* (1869) 76 U.S. (9 Wall.) 35 [19 L.Ed. 573].)

A statute must do one of three things to be an ex post facto law: (1) criminalize an act previously committed, which was innocent when done, (2) increase the punishment for a crime, after its commission, or (3) withhold a defense available according to the law when the act was committed. (*Collins* v. *Youngblood* (1990) 497 U.S. 37 [111 L.Ed.2d 30, 110 S.Ct. 2715]; *Tapia* v. *Superior Court*, *supra*, 53 Cal.3d at p. 292.) In this case, Mundy is being subjected to the exact same statutes which were in effect at the time his property was seized and forfeiture proceedings began. He cannot claim unfair surprise or vindictive government action under these circumstances. (See *People* v. *McVickers* (1992) 4 Cal.4th 81, 85 [13 Cal.Rptr.2d 850, 840 P.2d 955] [purpose behind ex post facto prohibition is to give notice

and ensure governmental accountability]; *People* v. *McKinney* (1979) 95 Cal.App.3d 712, 745-746 [157 Cal.Rptr. 414] [restoration of original punishment in effect at time of offense was not unjust or unfair].)[8]

## V

### EQUAL PROTECTION

■ Mundy additionally contends the new forfeiture law "creates a suspect classification for purposes of equal protection analysis." The basis for this contention is not entirely clear, but it appears to be grounded in the fact the new law creates a narrow class of persons, which includes Mundy, who are subject to the relatively harsh procedures of *Katz*. This class consists of persons "whose [forfeiture] actions arose prior to January 1, 1994 and whose claims had not been finally adjudicated prior to August 19, 1994[,]" the date the new law became effective. In comparison, persons whose forfeiture proceedings ended before August 19 were presumably afforded the broader procedural protections of *Condit*, and persons whose forfeiture proceedings commenced after August 19 will receive the procedural benefits of the new law. We see no equal protection problem with this result.

" 'A refusal to apply a statute retroactively does not violate the Fourteenth Amendment.' . . . 'The Fourteenth Amendment does not forbid statutes and statutory changes to have a beginning and thus to discriminate between the rights of an earlier and later time.' " (*Baker* v. *Superior Court* (1984) 35 Cal.3d 663, 668-669 [200 Cal.Rptr. 293, 677 P.2d 219], citations and brackets omitted.) In *Baker*, the petitioners challenged their continued commitment as mentally disordered sex offenders (MDSO's) after the Legislature eliminated the MDSO program following their initial commitment. Petitioners alleged a denial of equal protection in that they were subject to indefinite commitment, while MDSO's convicted under new laws would receive a determinate prison sentence. However, the court determined equal protection principles do not require that all persons who commit the same offense suffer the same consequences regardless of the date of their misconduct. (*Id.* at p. 669.) Rather, the Legislature may properly specify that statutory amendments and additions are prospective only. (*Id.* at pp. 669-670.) Such laws do not violate equal protection principles. (*Ibid.*; see also Gov. Code, § 9606 ["Any statute may be repealed at any time, except when vested rights would be impaired."].)

---

[8]Mundy also claims *Katz* "fails on its face to provide constitutional due process required for penal forfeiture." This direct attack on *Katz* was never mounted in the trial court. As such, we will limit our discussion to how reviving *Katz* affects Mundy's constitutional rights.

# VI

## CONCLUSION

In 1994, the Legislature passed a new forfeiture law but decided the law in effect on December 31, 1993, shall govern forfeiture proceedings commenced before January 1, 1994. While this determination deprives Mundy of some of the procedural advantages which accrued under the forfeiture statutes after January 1, 1994, those benefits are primarily prospective in their application to this case. Accordingly, the new law does not violate ex post facto principles. Nor does it violate Mundy's equal protection rights, given the Legislature's prerogative to make statutory amendments prospective only. Therefore, the district attorney may continue to pursue the forfeiture claim against Mundy under the statutes in effect on December 31, 1993. The alternative writ is discharged, and the petition for writ of prohibition/ mandate is denied.

Crosby, J., and Bedsworth, J.,* concurred.

On February 27, 1995, the opinion was modified to read as printed above.

---

*Judge of the Orange Superior Court sitting under assignment by the Chairperson of the Judicial Council.