Filed 5/15/24; Modified and Certified for Pub. 6/12/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re JOSE R., a Person Coming Under the Juvenile Court Law. | B326712 (Los Angeles County Super. Ct. No. YJ40891) |
| THE PEOPLE, Plaintiff and Respondent, v. JOSE R., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Nancy L. Newman, Judge. Affirmed.

Courtney M. Selan, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior

Assistant Attorney General, Wyatt E. Bloomfield and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Jose R. appeals from the juvenile court's disposition order committing him to a secure youth treatment facility (SYTF) for a baseline term of three years with a maximum term of six years. Jose was declared a ward of the juvenile court under Welfare and Institutions Code section 602[1] after he admitted as part of a negotiated plea that he had committed an assault with a semiautomatic firearm. Jose contends on appeal the court erred in applying his precommitment custody credits to his maximum term instead of his baseline term. We affirm.

## PROCEDURAL BACKGROUND

This case arises out of a shooting in which Jose and an adult man fired multiple gunshots, killing the victim. On January 25, 2022 the People filed a section 602 petition alleging that when Jose was 15 years old he committed first degree murder (Pen. Code, § 187, subd. (a)). On February 1, 2023, pursuant to a negotiated disposition, at the People's request the

_____

[1] Welfare and Institutions Code section 602, subdivision (a), states, "Except as provided in Section 707, any minor who is between 12 years of age and 17 years of age, inclusive, when he or she violates any law of this state or of the United States or any ordinance of any city or county of this state defining crime other than an ordinance establishing a curfew based solely on age, is within the jurisdiction of the juvenile court, which may adjudge the minor to be a ward of the court." Further undesignated statutory references are to the Welfare and Institutions Code.

juvenile court amended the petition to allege one count of assault with a semiautomatic firearm (§ 245, subd. (b)).  Jose admitted the allegation.  The court found the allegation true, declared the offense a felony, and dismissed the murder count.

Prior to the disposition hearing, defense counsel filed a motion requesting the juvenile court apply Jose's precommitment custody credits to his baseline term, which the People opposed.  On February 21, 2023 the juvenile court declared Jose a ward of the juvenile court and committed him to SYTF for a baseline term of three years with a maximum term of six years.  The court denied Jose's motion and applied 395 days of precommitment custody credits against the maximum term.  Jose timely appealed from the disposition order.

## DISCUSSION

A.    *Juvenile Justice Realignment and Sentencing*

"Until recently, the Department of Corrections and Rehabilitation, Division of Juvenile Justice (DJJ) was 'the state's most restrictive placement for its most severe juvenile offenders . . . .'" (*In re M.B.* (2024) 99 Cal.App.5th 435, 448 (*M.B.*).)  In 2020 and 2021 the Legislature passed a series of bills aimed at "juvenile justice realignment," with the purpose "to ensure that justice-involved youth are closer to their families and communities and receive age-appropriate treatment" and "to establish a separate dispositional track for higher-need youth." (Sen. Bill No. 823 (2019-2020 Reg. Sess.) (Stats. 2020, ch. 337, §§ 1, 30); see Sen. Bill No. 92 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 18) (Sen. Bill 92) [requiring, among other things, for counties to establish SYTF's]).

3

As part of realignment, the Legislature transferred responsibility for minors who have been adjudged wards of the court, and who would have been committed to DJJ, to county governments. (§ 736.5, subd. (a).) Effective July 1, 2021, with narrow exceptions, minors would no longer be committed to DJJ (*id*., subd. (b)), and DJJ was required to close on June 30, 2023 (*id*., subd. (e)). Senate Bill 92 added section 875, which took effect on May 14, 2021. (See Sen. Bill 92 (Stats. 2021, ch. 18, § 12.) Pursuant to section 875, a ward who meets certain criteria may be committed to SYTF. (§ 875, subd. (a).)[2]

In addition to changing the facilities in which juvenile offenders would be housed, the Legislature changed the form of sentencing for juvenile offenders. Prior to July 2021, when a ward was committed to DJJ, the juvenile court was required to "set a maximum term based upon the facts and circumstances of the matter . . . and as deemed appropriate to achieve rehabilitation." (§ 731, subd. (b), former subd. (c).) Section 726, subdivision (d)(1), in turn, mandated (as it does today) that a juvenile sentencing "order shall specify that the minor may not be held in physical confinement for a period in excess of the middle term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or

---

[2]    A minor found to be a ward of the court may be sentenced to SYTF if the minor was found to have committed an offense listed in section 707, subdivision (b); was 14 years old or older at the time of the offense; the section 707, subdivision (b), offense is the most recent offense for which the minor has been adjudicated; and the court has made a finding that a less restrictive, alternative disposition for the ward is unsuitable based on enumerated criteria. (§ 875, subd. (a).)

4

continued the minor under the jurisdiction of the juvenile court."[3] Section 726, subdivision (d)(1), therefore set a non-discretionary statutory limit on the commitment term imposed by the court (which the *M.B.* court referred to as the maximum exposure term). (See *M.B., supra*, 99 Cal.App.5th at p. 466.) Accordingly, the "maximum term" of imprisonment imposed by the court pursuant to section 731 (the maximum custodial term) in many cases is shorter than the maximum exposure term defined by section 726. (See *In re Ernesto L.* (2022) 81 Cal.App.5th 31, 39 (*Ernesto L.*) [section 731 "conferred on juvenile courts the "'discretion to impose less than the adult maximum term of imprisonment when committing a minor to [DJJ]'"'"].)

The statutes governing DJJ commitments did not specify whether the minor's precommitment custody credits should be applied against the maximum custodial term imposed under section 731 or the maximum exposure term under section 726. The Courts of Appeal were divided on this question. The Fourth Appellate District in *In re A.R.* (2018) 24 Cal.App.5th 1076 concluded precommitment custody credits should apply to the maximum exposure term under section 726, not the maximum custodial term imposed under section 731. By contrast, the First Appellate District in *Ernesto L., supra*, 81 Cal.App.5th at page 34

---

[3] Section 726, subdivision (d)(2), provides further that "[a]s used in this section and in Section 731, 'maximum term of imprisonment' means the middle of the three time periods set forth in paragraph (3) of subdivision (a) of Section 1170 of the Penal Code, but without the need to follow the provisions of subdivision (b) of Section 1170 of the Penal Code or to consider time for good behavior or participation pursuant to Sections 2930, 2931, and 2932 of the Penal Code, plus enhancements which must be proven if pled."

held "that when a minor is committed to DJJ, a juvenile court must apply the minor's precommitment credits against the maximum custodial term" imposed under section 731.

After realignment, when a juvenile court commits a minor to SYTF, the court must likewise set a baseline period of confinement and a statutory maximum. Section 875, subdivision (b)(1), provides that the court must "set a baseline term of confinement" that "shall represent the time in custody necessary to meet the developmental and treatment needs of the ward and to prepare the ward for discharge . . . ."[4] The baseline term is subject to potential downward modification (or a ward may be released from SYTF and assigned to a less restrictive program) during progress review hearings that must be held at least once every six months. (§ 875, subds. (b)(1) & (e).) The court must "additionally set a maximum term of confinement for the ward based upon the facts and circumstances of the

---

[4] Section 875, subdivisions (b)(1) and (h), provide for the development and approval by the Judicial Council of offense-based classifications to be used by juvenile courts as guidelines for setting the baseline terms of confinement. Pending approval of Judicial Council guidelines, subdivision (b)(1) required the court to "set a baseline term of confinement for the ward utilizing the discharge consideration date guidelines applied by [DJJ] prior to its closure and as set forth in Sections 30807 to 30813, inclusive, of Title 9 of the California Code of Regulations." Under section 30809, subdivision (a)(9), the baseline term for assault with a deadly weapon was three years. The Judicial Council adopted commitment guidelines effective July 1, 2023. (See Cal. Rules of Court, rule 5.806 [guidelines for setting SYTF baseline terms].)

matter . . . and as deemed appropriate to achieve rehabilitation." (§ 875, subd. (c)(1).)  The maximum term of confinement "shall represent the longest term of confinement in a facility that the ward may serve," subject to certain limitations, including that "[t]he maximum term of confinement shall not exceed the middle term of imprisonment that can be imposed upon an adult convicted of the same offense or offenses."[5]  (*Id.*, subd. (c)(1)(B).)  This maximum term of confinement serves as a limit on how long a ward's time in custody may be extended at the conclusion of the baseline term if the court finds "the ward constitutes a substantial risk of imminent harm to others in the community if released from custody" (§ 875, subd. (e)(3))[6] and on how long a ward may be recommitted to a SYTF after being placed in a less restrictive program (*id.*, subd. (f)(2)).  Finally, and central to this appeal, section 875, subdivision (c)(1)(C), provides, "Precommitment credits for time served must be applied against the maximum term of confinement as set pursuant to this subdivision."

---

[5]     Section 875, subdivision (c)(1)(A), further provides (except where the minor would face an aggregate sentence as an adult for the same offense(s) of seven or more years) that a "ward committed to a secure youth treatment facility under this section shall not be held in secure confinement beyond 23 years of age, or two years from the date of the commitment, whichever occurs later."

[6]     Pursuant to section 875, subdivision (e)(3), if the juvenile court finds the ward constitutes a risk of imminent harm to others in the community if released, the ward may be retained in custody in a SYTF for up to one additional year, subject to the maximum term of confinement.

B.      *The Juvenile Court Did Not Err in Applying Jose's Custody Credits to the Maximum Term of Confinement*

Jose contends the juvenile court erred in applying his precommitment custody credits to the six-year maximum term of confinement the court imposed under section 875, subdivision (c)(1), arguing that under *Ernesto L., supra*, 81 Cal.App.5th at page 34, prior to realignment, courts were required to apply precommitment custody credits to the maximum custodial term under section 731, subdivision (b), which he argues is functionally "similar to, if not the equivalent of" the baseline term that juvenile courts must impose post-realignment under section 875, subdivision (b)(1). Therefore, he argues, we should adopt the *Ernesto L.* court's reasoning and order the juvenile court to apply his precommitment custody credits to the baseline term. The court did not err.

Contrary to Jose's contention, we need not analogize the pre- and post-realignment statutes to determine how the Legislature intended precommitment custody credits to apply: the Legislature has explicitly instructed juvenile courts to apply custody credits to the "maximum term of confinement" imposed under section 875, subdivision (c)(1). As discussed, Section 875, subdivision (c)(1)(C), unambiguously states that "[p]recommitment credits for time served must be applied against the maximum term of confinement as set pursuant to this subdivision." Where statutory language "is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend." (*Jarman v. HCR ManorCare, Inc.* (2020) 10 Cal.5th 375, 381.) Jose's argument essentially asks us to rewrite subdivision (c)(1)(C) to substitute the words "baseline term" for

8

"maximum term." We cannot. "A court may not rewrite a statute, either by inserting or omitting language, to make it conform to a presumed intent that is not expressed." (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 73-74.) There is no reasonable interpretation of section 875, subdivision (c)(1)(C), other than that precommitment custody credits must be applied to the maximum term set by the court under section 875, subdivision (c)(1), as the court did here. (See *M.B., supra*, 99 Cal.App.5th at p. 470 ["we think it is clear the application of precommitment credits against the baseline term is not intended"].)

Jose's attempt to manufacture an ambiguity or inconsistency in section 875 is likewise unavailing. Jose explains that while section 875, subdivision (c)(1), instructs the juvenile court to set a "maximum term of confinement" based on "the facts and circumstances of the matter," subdivision (c)(2) states the maximum term of confinement as used in section 875 has the same meaning as "maximum term of imprisonment" under section 726, subdivision (d)(2), which specifies the maximum term is the middle term of imprisonment that can be imposed on an adult for the same offense. Thus, Jose argues, the maximum term of confinement has inconsistent meanings—a term based on the facts and circumstances of the matter under section 875, subdivision (c)(1), and the middle term of imprisonment that could be imposed on an adult convicted of the same offense, as set forth in section 875, subdivision (c)(2) (by incorporating the definition in section 726, subdivision (d)(2)). Jose ignores the fact, however, that section 875, subdivision (c)(1)(B), like section 726, subdivision (d)(2), provides that the maximum term of confinement "shall not exceed the middle term of

imprisonment" that can be imposed on an adult for the same offense.[7]  There is no inconsistency—the maximum term of confinement must reflect the facts and circumstances of the matter, but cannot exceed the middle term for an adult offense. Moreover, even if there were some ambiguity or inconsistency in section 875, as discussed, it is not our role to rewrite the statute given the Legislature's clear pronouncement in section 875, subdivision (c)(1)(C), that precommitment custody credits must be applied against the maximum term of confinement.

C.	*The Application of Jose's Custody Credits to the Maximum Term of Confinement Does Not Violate Equal Protection*
	Both the federal and California Constitutions guarantee individuals the equal protection of the laws.  (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a); see *People v. Hardin* (2024) 15 Cal.5th 834, 847 & fn. 2 (*Hardin*); *People v. Chatman* (2018) 4 Cal.5th 277, 287.)  The concept of equal protection requires "'that all persons similarly situated should be treated alike.'  [Citation.]  'At core, the requirement of equal protection ensures that the government does not treat a group of

---

[7]	Further, as the People point out, section 731, subdivision (b), in requiring the maximum custodial term imposed pre-realignment reflect the "facts and circumstances of the matter," is most similar to the post-realignment maximum exposure term under section 875, subdivision (c)(1), which likewise must be "based upon the facts and circumstances of the matter."  (See *M.B., supra*, 99 Cal.App.5th at p. 468 [both sections 731 and 875 describe the maximum term of confinement "'based upon the facts and circumstances of the matter or matters that brought or continued the ward under the jurisdiction of the court and as deemed appropriate to achieve rehabilitation'"].)

people unequally without some justification.'" (*Hardin*, at p. 847; accord, *Chatman*, at p. 288.)

Until recently, the Supreme Court had applied a two-part inquiry, first asking "'whether the state adopted a classification affecting two or more groups that are similarly situated in an unequal manner.'" (*Hardin, supra*, 15 Cal.5th at p. 848, quoting *Chatman, supra*, 4 Cal.5th at p. 289.) In *Hardin*, the court eliminated this inquiry in most instances. "[W]hen plaintiffs challenge laws drawing distinctions between identifiable groups or classes of persons, on the basis that the distinctions drawn are inconsistent with equal protection, courts no longer need to ask at the threshold whether the two groups are similarly situated for purposes of the law in question. The only pertinent inquiry is whether the challenged difference in treatment is adequately justified under the applicable standard of review. The burden is on the party challenging the law to show that it is not." (*Hardin*, at pp. 850-851.)

"Where, as here, a statute involves neither a suspect class nor a fundamental right, it need only meet minimum equal protection standards, and survive 'rational basis review.'" (*People v. Turnage* (2012) 55 Cal.4th 62, 74.) A right is fundamental if it is "'"deeply rooted in this Nation's history and tradition," . . . and "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if [it was] sacrificed."'" (*Jimenez v. County of Los Angeles* (2005) 130 Cal.App.4th 133, 142, quoting *Washington v. Glucksberg* (1997) 521 U.S. 702, 720-721.) If a law does not burden a fundamental right, "[w]e find a denial of equal protection only if there is no *rational* relationship between a disparity in treatment and some legitimate government purpose." (*Chatman*, at pp. 288-289; accord, *Hardin, supra*, 15 Cal.5th at

11

p. 847.)  "Rational basis review 'sets a high bar' for litigants challenging legislative enactments."  (*Hardin*, at p. 852.)  "Under this deferential standard, we presume that a given statutory classification is valid 'until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable.'"  (*Ibid*.)

Jose argues application of precommitment custody credits to the maximum term of confinement pursuant to section 875, subdivision (c)(1)(C), violates equal protection by treating minors sentenced prior to realignment differently than minors sentenced after realignment.  However, as the Supreme Court has explained, the Legislature is entitled to make changes to sentencing statutes that create disparities between how individuals are sentenced before and after the amendments without violating principles of equal protection.  (See *People v. Floyd* (2003) 31 Cal.4th 179, 191 [rejecting 14th Amendment challenge to Proposition 36, the Substance Abuse and Crime Prevention Act of 2000, reasoning, "'[t]he 14th Amendment does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time'"]; *Baker v. Superior Court* (1984) 35 Cal.3d 663, 668-670 [extension of involuntary commitment of a mentally disordered sex offender (MDSO) who was committed before the repeal of the MDSO law and remained subject to the former law was not a denial of equal protection even though persons convicted of a sex offense after the repeal were sentenced to a determinate prison term and were not subject to extended commitment]; *Mundy v. Superior Court* (1995) 31 Cal.App.4th 1396, 1408 [failure to apply newly enacted more lenient property forfeiture law did not "violate Mundy's equal protection rights,

given the Legislature's prerogative to make statutory amendments prospective only"].)  Therefore, regardless of whether realignment resulted in less favorable treatment of precommitment credits (which is far from clear), the amendments did not violate equal protection principles.

## DISPOSITION

The juvenile court's disposition order is affirmed.


FEUER, J.

We concur:


MARTINEZ, P. J.


SEGAL, J.

13

Filed 6/12/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re JOSE R., a Person Coming Under the Juvenile Court Law. | B326712 (Los Angeles County Super. Ct. No. YJ40891) |
| THE PEOPLE, Plaintiff and Respondent, v. JOSE R., Defendant and Appellant. | ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PUBLICATION (NO CHANGE IN APPELLATE JUDGMENT) |

THE COURT:

The above-entitled opinion filed on May 15, 2024 is modified as follows:

In the first paragraph of page 2, delete the second to last sentence that reads, "Jose contends on appeal the court erred in applying his precommitment custody credits to his maximum term instead of his baseline term," and replace it with:

Jose contends on appeal the court erred in applying his precommitment custody credits to his maximum term under section 875, subdivision (c)(1)(C), instead of his baseline term under section 875, subdivision (b)(1). However, the Legislature has made clear in the statutory language that juvenile courts must apply precommitment custody credits to the maximum term of confinement. Further, the legislative scheme does not violate Jose's right to equal protection of the laws.

The opinion was not certified for publication. It now appears the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c).

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

There is no change in the appellate judgment.

_____

MARTINEZ, P. J.   SEGAL, J.   FEUER, J.

3